Annie L. BETTS, Plaintiff,

v.

SPERRY DIVISION OF SPERRY RAND CORPORATION: Salvatore Conigliaro, President; Harold Dahl, Vice-President, Personnel: Edward Thyberg, Director of Management and Organizational Development, Defendant.

No. 80 CIV 3142.

United States District Court, E.D. New York.

Jan. 31, 1983.

---

Jimmie L. Engram, New York City, for plaintiff.

Seham, Klein & Zelman, New York City, for defendant; Martin C. Seham, Joan Ebert Rothermel, New York City, of counsel.

## OPINION

McLAUGHLIN, District Judge.

Plaintiff brings this discrimination action, arising under Title VII of the 1964 Civil Rights Act ("the Act"), alleging that defendants violated the Act by discriminatory failure to promote her and by retaliatory termination of her employment. During a four-day trial, plaintiff fully presented her case; defendants called four witnesses in rebuttal. Both sides have submitted pretrial and post-trial briefs, and have furnished proposed Findings of Fact and Conclusions of Law. For the reasons developed below, judgment will be entered for the defendants. The request for attorneys' fees, however, is denied.

## FINDINGS OF FACT

Plaintiff, a black female, was employed by Sperry Division of Sperry Rand Corporation ("Sperry") from 1966 to 1980. Between 1966 and 1970, she was promoted from typist, to secretary-steno, to full secre-

tary. The most significant career advance came in 1970, when she attained the management position of Equal Employment Administrator. In 1972, she was transferred to the position of Placement Representative. Her career continued to progress. In 1973, Sperry selected her to participate in a management conference in Florida where she was recognized as having made the best presentation among forty speakers.

## A. *Failure to Promote*

The series of events which gave rise to this litigation began in 1975. In August, 1975, there was a surplus of personnel in the Employment Department. Accordingly, plaintiff and another Placement Representative (Mr. Thomas Bellingham, a white male) were transferred. She became a Training Coordinator; he became a Salary and Personnel Systems Analyst. Both moves were lateral, involving neither a promotion nor a salary increase. Bellingham had a Bachelor's degree in Economics and Business and a Masters degree in Business Administration. Plaintiff, on the other hand, had no background in economics or accounting, although she had earned some credit toward a college degree.

Plaintiff testified at trial that there were four positions for which she was qualified: (1) Labor Relations task force member; (2) Employee Relations Supervisor; (3) Employee Relations Manager; and (4) Senior Placement Representative. It is her contention that, in 1975, Sperry should have promoted her to one of those positions rather than reassigning her to the Training Coordinator's position.

(1) John Markowski and Damon Lupu, two other employees of Sperry, were transferred to the newly-created Labor Relations task force. Neither received a salary increase. Markowski, a white male, was serving as Training Administrator in August 1975, when he was temporarily assigned to the task force. The stated purpose of the

task force was to assist Sperry in upcoming collective bargaining negotiations. Markowski had a degree in Engineering, had worked in the Engineering Department for three years, had been a member of Sperry's largest bargaining unit, and had worked in the management development area. Lupu, also a white male, was serving as Salary and Wage Administrator in August, 1975, when he was assigned to the task force. He held a Masters in Business Administration, had served as Salary and Wage Analyst and was familiar with the compensation practices of the company.

(2)(3) Clifford Emmerich, a white male, was promoted in September, 1975, from Supervisor, Employee Relations, to Manager, Employee Relations. Emmerich had a Bachelor's degree in Business, and prior experience as Employment Planning Coordinator and Personnel Manager, as well as three years' experience as Supervisor, Employee Relations. No one was promoted to fill the resulting vacancy in the position of Supervisor; that position has remained open to this day.

(4) Finally, the position of Senior Placement Representative was simply not available at the time of plaintiff's transfer. Mr. Patrick Smith, who had held that position since 1973, continued to do so during 1975.[1] No one else held, or was promoted to, the office of Senior Placement Representative.

In August, 1976, plaintiff was reassigned to her previous position as Placement Representative, where she remained until she was discharged in November, 1980.

## B. *Retaliatory Discharge*

Sperry bases its dismissal of plaintiff in 1980 on a series of events that commenced in 1976, shortly after plaintiff claims she should have been promoted. Plaintiff counters by drawing the Court's attention to certain charges she brought against the

---

**1.** Plaintiff claims that defendant "could have" created a second Senior Placement Representative opening. This, of course, is true, but is not relevant. To carry plaintiff's argument to its logical conclusion would mean that a defendant violates the Act merely by refusing to create such positions at the behest of a potential plaintiff. This is not the law. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

company: charges which, in her estimation, caused Sperry to terminate her.

On May 10, 1976, plaintiff filed charges of employment discrimination with the New York State Division of Human Rights and the Equal Employment Opportunity Commission (EEOC), alleging discriminatory failure to promote in August, 1975. A probable cause finding was made by the EEOC on December 29, 1976.

In 1978, a public hearing was held before the State Division of Human Rights on the merits of plaintiff's charges, and in June, 1979, the complaint was dismissed by the State Division. In September, 1980, the complaint was dismissed by the EEOC, and plaintiff was issued a Right to Sue letter, which paved the way for the instant litigation.

Sperry claims, however, that the termination was unrelated to the charges brought by plaintiff, and that she lost her job because of her deteriorating performance, as detailed below.

In January, 1976, plaintiff, who was then employed as Training Coordinator, was relieved of her counseling duties. Her removal was requested by the Chairman of the Affirmative Action Committee (a committee of minority employees set up by Sperry), after employees had complained of abusive treatment by plaintiff.

In March, 1977, Sperry received a complaint from the Nassau County Job Development Center concerning plaintiff's abusive treatment of minority job applicants who had been referred to Sperry by the Center. As a result of this, and similar complaints from employees, plaintiff was given a written warning from her supervisor, Mr. Joseph Dwyer, on March 15, 1977, concerning her performance and her treatment of employees and applicants.

On August 20, 1979, Dwyer again gave plaintiff written warning concerning her treatment of applicants and her inquiry into impermissible subjects during employment interviews. This communication followed complaints by interviewees as to the type of questions being asked by plaintiff during interviews: questions unrelated to qualifications for the job.

Dwyer retired in late 1979, and was replaced by Mr. A.R. Pfarrer. From that point, the situation worsened dramatically.

On February 28, 1980, Pfarrer issued a "final" written warning to plaintiff concerning her professional responsibilities and her handling of inquiries from employees. This letter was prompted by a verbal complaint from an employee, and by a written report from another Placement Representative, both concerning plaintiff's abusive treatment of that employee.

On May 8, 1980, Pfarrer received a written grievance from four female secretaries, who complained of plaintiff's failure to contribute to the operations of the department. The memorandum, which cited plaintiff for reading, sleeping, manicuring her nails, and "meditating" on the job, requested correction or equal treatment. One day later, Pfarrer received a memorandum from his supervisor concerning plaintiff's sleeping on the job. In response to these two documents, Pfarrer gave plaintiff another "final" written warning on May 29, 1980. That document admonished plaintiff for sleeping on the job, poor attendance, and overall unsatisfactory performance.

On November 7, 1980, after a job applicant who had been interviewed by plaintiff filed an age discrimination suit against Sperry, Pfarrer notified plaintiff that she was being fired.[2] She was informed that her termination was based on: her overall poor record; her failure to improve, despite warnings; and her faulty handling of the job application.

## CONCLUSIONS OF LAW

### A. *Failure to Promote*

Section 703(a)(1) of the Act, 42 U.S.C. § 2000e–2(a)(1), provides, in relevant part:

---

**2.** There is some disagreement as to the scope of plaintiff's responsibility for the mishandling of the application. Assuming, however, that plaintiff took the proper steps in processing the application, the conclusion that plaintiff's termination was justified is unchanged. *See Conclusions of Law,* B., *infra.*

"It shall be an unlawful employment practice for an employer—(1) to . . . discriminate against any individual with regard to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ."

█ To establish a *prima facie* case under the above section, plaintiff must show that she:

(a) belongs to a racial minority; (b) applied for and was qualified for an available position; (c) was rejected despite her qualifications; and (d) that the position remained available after her rejection and the employer continued to seek applicants from persons of plaintiff's qualifications.

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

█ Once plaintiff establishes a *prima facie* case of discrimination, defendants must produce evidence of legitimate, non-discriminatory reasons for the employment action taken. Defendants are neither required to prove that the action was lawful, nor that the person promoted had superior objective qualifications. *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *Board of Trustees of Keene College v. Sweeney,* 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Lieberman v. Gant,* 630 F.2d 60 (2d Cir.1980).

If the defendants articulate non-discriminatory, legitimate reasons for their actions, the burden shifts back to the plaintiff to prove that the alleged justifications are pretextual, and that she was the victim of intentional discrimination. *Texas Depart-*

*ment of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

█ I find that plaintiff has failed to establish her *prima facie* case as to all but the Labor Relations task force and Employee Relations Manager positions. As to the position of Senior Placement Representative, she simply has not demonstrated its availability: the slot was, and continues to be, occupied by Mr. Smith.[3] As to Employee Relations Supervisor, plaintiff fails to satisfy the fourth element of the *prima facie* case because the position did not remain open after Emmerich had been transferred, nor did Sperry continue to seek applicants after plaintiff had been rejected.

█ Plaintiff is able to clear the qualification hurdle as to the Labor Relations task force and Employee Relations Manager positions, largely because there are apparently no express qualifications for either post. I conclude, however, that Sperry had legitimate business reasons for passing plaintiff over. Again, both Markowski and Lupu had education and experience which well-suited them for the Labor Relations task force.[4] Sperry's justification for the selection of Emmerich to the position of Employee Relations Manager is even stronger: Emmerich had previously been in the position of Employee Relations Supervisor and it would have been unusual, at the very least, for Sperry to have vaulted plaintiff over Emmerich into the managerial position.

Plaintiff has not produced sufficient evidence to support a holding that Sperry's proffered reasons for failing to promote were pretextual. Accordingly, Sperry must prevail on the promotion issue.[5]

**3.** *See* note 1, *supra.*

**4.** Because neither Markowski nor Lupu received a salary increase, it is unclear whether or not there was a promotion. Plaintiff contends that, because both men subsequently were highly successful with the company, the transfer was effectively a promotion. The logic of this argument escapes me. Even if it were determined, however, that these two men did

receive a promotion, the result would not change.

**5.** Plaintiff makes the further argument that the small number of minorities at Sperry, and the absence of black supervisors or managers, may be used as evidence of discrimination. This is a correct statement of the law. As the Supreme Court stated in *McDonnell Douglas, supra,* 411 U.S. at 804–05, 93 S.Ct. at 1825, "statistics as to [defendant's] employment policy

### B. Retaliatory Discharge

Section 704(a) of Title VII provides, in pertinent part:

It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000e–3(a) (1978).

A plaintiff establishes a *prima facie* case under this section by showing: (1) statutorily protected participation; (2) adverse employment action; and (3) a causal connection between the two. *Womack v. Munson,* 619 F.2d 1292, 1296 (8th Cir.1980), *cert. denied,* 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814; *Reilly v. Califano,* 537 F.Supp. 349, 354 (N.D.Ill.1981).

I find that plaintiff has failed to establish a causal connection between the administrative proceedings that she instituted and her termination. I am simply not persuaded that Sperry considered the filing of charges against it when it decided to discharge her. She does claim that, beginning in 1979, defendants began to "write her up" for insignificant infractions. (Plaintiff's Proposed Findings of Fact, para. 25). It is clear, however, that plaintiff had been cited by a number of people, and for a number of infractions, over a period of almost five years. She indisputably received three written warnings, and apparently was not contributing fully to the office effort. No statute requires an employer to retain an employee under such circumstances.

### C. Attorney's Fees

The Supreme Court has stated that attorney's fees may be awarded to a prevailing party in Title VII litigation: "[A] district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

Viewing the record in its entirety, I find that defendants are not entitled to attorney's fees. This is not a case in which plaintiff ignored a substantial body of contrary case law in bringing suit. *See Prate v. Freedman,* 583 F.2d 42 (2d Cir.1978). And, as demonstrated above, at least with respect to two positions, plaintiff did state a *prima facie* case. Thus, although she did not prevail, plaintiff acted neither "unreasonably" nor "frivolously."

Accordingly, judgment will be entered for defendants, but the request for attorney's fees is denied.

SO ORDERED.

---

and practice may be helpful to a determination of whether [defendant's actions] in this case conformed to a general pattern of discrimination against blacks." The Court went on to caution, however, that, "[S]uch general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for [the action taken]." *Id.* at 805, n. 19, 93 S.Ct. at 1826, n. 19.

Here, as amply demonstrated above, defendants plainly had legitimate business reasons for not promoting plaintiff. Similarly, as will be shown in the discussion that follows, defendants also had legitimate reasons for terminating plaintiff.