**WSB ELECTRIC COMPANY, INC., Plaintiff,**

v.

**RANK & FILE COMMITTEE TO STOP the 2–GATE SYSTEM; Christina Bailey, Eric Svahn and John Reimann, individually and as agents for Rank & File Committee To Stop the 2-Gate System, Defendants.**

**No. C–84–2431–WWS.**

United States District Court, N.D. California.

Nov. 9, 1984.

**418**

Mark R. Thierman, Deborah E. G. Wilder, Thierman, Simpson & Cook, San Francisco, Cal., for plaintiff.

James E. Eggleston, Mocine, Plotz & Eggleston, Oakland, Cal., for defendants.

## MEMORANDUM OF OPINION AND ORDER

SCHWARZER, District Judge.

This action is before the Court on defendants' motion for an order imposing sanctions on plaintiff pursuant to Rule 11, Fed. R.Civ.P. The Court has held a hearing and, following argument, permitted the parties to file supplemental papers. For the reasons stated, the Court finds that the pleadings filed by plaintiff violate Rule 11 and that sanctions must be imposed.

### Factual Background

On April 25, 1984, plaintiff WSB Electric Company, Inc., (WSB) filed a complaint against defendant Rank & File Committee to Stop the 2-Gate System (Committee) and the individuals associated with the Committee. The complaint alleged six claims:

First, it sought injunctive relief against mass picketing;

Second, it alleged violations of 18 U.S.C. § 1951 (Hobbs Act) which makes it a crime to obstruct interstate commerce by robbery, extortion or physical violence;

Third, it alleged violations of 18 U.S.C. § 1961 (RICO) based upon picketing, blocking access, harassing plaintiff's employees and others and use of the mail and telephone for that purpose;

Fourth, it alleged violation of 18 U.S.C. § 241 which makes it a crime to conspire to injure or oppress citizens in the free exercise of their civil rights;

Fifth, it alleged interference with plaintiff's business advantages arising out of its construction agreement.

Sixth, it alleged a common law conspiracy.

On June 11, 1984, plaintiff filed a notice of taking the deposition of the three individual defendants and a demand for production of the minutes and records of the Committee, including the names of all past and present members and contributors. Plaintiff's counsel refused to stay discovery pending a determination of the appropriate scope of discovery at the status conference scheduled two weeks later.

Meanwhile defendants moved to dismiss and at a hearing on shortened time the Court dismissed the complaint with leave to amend. No amended complaint was ever filed.

On August 31, defendants moved for sanctions. At a hearing on September 14, the Court directed plaintiff to file a response to demonstrate that its pleadings complied with Rule 11. Plaintiff filed a supplemental memorandum and supporting documents and defendants have responded.

### Application of Rule 11

I. Well-grounded in fact and warranted by law.

The first prong of Rule 11 provides that:

The signature of an attorney [on a pleading or other paper] ... constitutes a

certificate by him that he has read ... [it]; that to the best of his knowledge, information and belief formed after a reasonable inquiry it is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law...."

The first inquiry then must be directed at the factual basis for the complaint. Plaintiff in response to the motion has come forward with its statement of the facts relied on. There appear to be no significant differences between the parties regarding the material facts; their difference is in how they characterize those facts.

The action arises out of picketing by the Committee on March 30, 1984, of WSB's job site at Fort Miley Hospital in San Francisco. As described by plaintiff in its opposition, the material facts are as follows:

On March 30, 1984 the Rank and File Committee Against the 2-Gate System ("the Committee") demonstrated at WSB's jobsite at Fort Miley (the Veteran's Hospital) in San Francisco. Several hundred hostile pickets blocked entrances, and interfered with ingress and egress of vehicles in and around the Hospital. (Exhibit 1 attached hereto and incorporated herein.) Additionally, sporadic flurries of violence and threats occurred.

On subsequent days large numbers of pickets arrived and again blocked entrances, causing delay of deliveries. Some pickets participated in minor threats and "name calling." Others destroyed property and spray-painted the building with threats and obscenities.

As defendants point out—without dispute—the police appeared only briefly, there were no orders to disperse and no one was arrested or detained. There was no violence and plaintiff did not seek injunctive relief in the state court against mass picketing or violence.

The most that can be said about the situation as described *by plaintiff* is that it constituted mass picketing which interfered to some extent with ingress and egress at the job site but not sufficiently for plaintiff to seek a state court injunction against mass picketing or violence. The facts alleged support none of the claims in the complaint with the possible exception of the state law claims for injunctive relief and interference with business advantage. But this Court has no jurisdiction to grant relief to plaintiff on those claims unless they are pendent to valid federal law claims. None of the federal claims, however, have a factual basis; plaintiff has come forward with no facts from which one could infer the commission of robbery, extortion or physical violence obstructing interstate commerce, a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), or a conspiracy to deny citizens their civil rights.

This leads to the second inquiry: whether the federal claims which are jurisdictional have any warrant in law.

*The Hobbs Act Claim.*

The Hobbs Act is a criminal statute. No decision finding a private cause of action to exist under that act has been cited and the Court knows of none.

Undeterred, plaintiff argues that "the Committee's activities amount to ... extortion." The act defines extortion as "the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, for fear." 18 U.S.C. § 1951(b)(2). Nothing of the sort is said to have occurred. In *United States v. Enmons*, 410 U.S. 396, 93 S.Ct. 1007, 35 L.Ed.2d 379 (1973), the Supreme Court specifically rejected the argument that the Hobbs Act covers "overtly coercive conduct in the course of an economic strike, obstructing, delaying, or affecting commerce." 410 U.S. at 410. Regardless of whether the Committee technically constitutes a labor organization, its objective, as shown by Exhibit A to the complaint, was to stop the use of the 2-Gate System because it restricts permissible picketing at the job site, clearly a legitimate labor objective. Cf. *United States v. Addonizio*, 451 F.2d 49, 59 (3d Cir.1972).

*The RICO Claim.*

RICO makes it unlawful for a person associated with an enterprise affecting commerce to conduct its affairs through a "pattern of racketeering activity." 18 U.S.C. § 1962(c). A pattern of racketeering activity requires proof of at least two acts of racketeering activity constituting one of the crimes listed in 18 U.S.C. § 1961(1). Plaintiff has come forward with no facts suggesting that defendants committed any of those crimes. Cf. *United States v. Thordarson,* 646 F.2d 1323, 1327–31 (9th Cir.1981).[1]

*The Civil Rights Claim.*

18 U.S.C. § 241 makes it unlawful for two or more persons to conspire to threaten or intimidate any citizen in the free exercise of any right or privilege under the Constitution or laws of the United States. That statute, too, does not provide for civil liability and the Ninth Circuit has specifically so held. *Aldabe v. Aldabe,* 616 F.2d 1089 (9th Cir.1980). Plaintiff, in its opposition to the motion for sanctions, makes no effort to justify this claim.

■ Rule 11 does not preclude counsel from advancing innovative claims and contentions to advance their client's cause. Nor is it intended to chill vigorous advocacy. What it does require, however, is that lawyers not commence an action until they have formed a reasonable belief, based on reasonable inquiry, that it is well grounded in fact and warranted by existing law or by a good faith argument for extension of existing law.

■ As the foregoing discussion shows, the complaint is plainly neither well grounded in fact nor warranted by existing law. Plaintiff's counsel contend that they are entitled to make an argument for the extension or modification of existing law. Their difficulty, however, is that they have not advanced one. What they have done instead is to attempt to squeeze plaintiff's claim into the mold of existing law by a wholly reckless and disingenuous presentation of the case. Any reasonably competent lawyer—and plaintiff's counsel are specialists in this area of the law—would know that mass picketing interfering with free movement about the job site accompanied by some harsh words and minor mischief is neither a Hobbs Act nor a RICO violation, let alone a criminal conspiracy. Plaintiff's effort to argue the contrary exceeds the limits of acceptable advocacy and violates Rule 11. *See, Golden Eagle Distributing Co. v. Burroughs Corp.,* 103 F.R.D. 124 (N.D.Cal.1984).

II. Interposed for an improper purpose.

The second prong of Rule 11 provides that a lawyer's signature certifies that the paper

is not interposed for an improper purpose, such as to harass....

While the Court's finding of a lack of a factual and legal basis for the action suffices to require imposition of sanctions, it is appropriate also to consider the apparent purpose of this action.

The complaint was filed more than three weeks after the alleged mass picketing and interference took place. Instead of seeking prompt relief in state court, plaintiff filed this action followed shortly by a notice of taking depositions and a demand for production of documents. The latter included a list of all present and past committee members and contributors. Plaintiff's counsel refused defendants' request to continue the discovery until after the status conference scheduled for July 27, 1984.

Had plaintiff's purpose been to seek relief against mass picketing and violence, it would have followed the customary procedure of seeking immediate injunctive relief in the state court. *See San Diego Unions v. Garmon,* 359 U.S. 236, 247, 79 S.Ct. 773, 780, 3 L.Ed.2d 775 (1959). That it chose instead to commence complex and burdensome litigation in this Court, and to insist

---

1. The character of plaintiff's argument is illustrated by its contention that it satisfied the requirement of RICO by alleging a violation of the Landrum-Griffin Act and the Taft Hartley Act.

But RICO includes among the predicate offenses only those indictable acts under those acts which relate to illegal payments or embezzlement, neither of which is involved here.

on discovery into such highly sensitive and only marginally relevant matters as the identity of the Committee's members and contributors, raises a strong inference that plaintiff's purpose was to harass the Committee, presumably to disrupt or discourage its advocacy of hostile views.

This Court, more and more frequently, is confronted with litigation—especially in the labor field—in which one party or the other pursues economic or political objectives which have no place in the courts. A segment of the bar seems to make a speciality of using the courts as a battleground for conducting economic or political warfare, whether against employers or labor interests.[2] Where a non-frivolous claim is stated, the courts must of course entertain it. But where a court is faced with pleadings such as those in this case, Rule 11 mandates the imposition of sanctions.

Accordingly, the motion for sanctions is granted. Defendants have reasonably incurred $6,125 in attorney's fees to defend against this action. The sum of $6,125 is assessed jointly and severally against plaintiff WSB and its attorneys to be paid within ten days of this order.

IT IS SO ORDERED.

---

**2.** See *Huettig & Schromm, Inc. v. Landscape Contractors Council,* 582 F.Supp. 1519 (N.D.Cal. 1984).