**Ida HUDSON, Plaintiff,**

v.

**MOORE BUSINESS FORMS, INC., a corporation, Joe McArthur, Edward Glover, William McLean, Jim Clark as Doe I, and Does II through XXXX, inclusive, Defendants.**

**No. C–84–2104–MHP.**

United States District Court,
N.D. California.

Jan. 4, 1985.

Supplemental Opinion May 22, 1985.

Marilyn MacRae, Oakland, Cal., for plaintiff.

Henry D. Lederman, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for defendants.

MEMORANDUM DECISION
AND ORDER

PATEL, District Judge.

Plaintiff Ida Hudson initiated this suit in state court against her former employer, Moore Business Forms, Inc. ("Moore"), and

some of her former superiors at Moore, Joe McArthur, Edward Glover, William McLean and Jim Clark. She alleges that Moore violated the Federal Equal Pay Act, 29 U.S.C. § 206(d)(1), Cal.Lab.Code § 1197.-5, and the California Fair Employment and Housing Act ("CFEHA"), Cal.Gov't Code § 12920 et seq. She also asserts several pendent state law claims including breach of employment contract, breach of the implied covenant of good faith and fair dealing, and interference with advantageous economic relations. She alleges that defendants McArthur, Glover, McLean and Clark violated the CFEHA and are guilty of interference with advantageous economic relations.

Defendants removed the action to this court and filed a counterclaim, alleging that plaintiff violated Cal.Lab.Code §§ 2854, 2856–59, and 2865, and breached duties of loyalty and good faith and fair dealing.

Defendants have filed a motion for partial summary judgment on plaintiff's complaint. Defendants McArthur, Glover, McLean and Clark have also moved to dismiss for lack of jurisdiction and/or summary judgment, with McArthur, Glover, and Clark alleging that this court lacks in personam jurisdiction over them, and all four individuals contending that the doctrine of "managerial immunity" shields them from plaintiff's CFEHA and tort claims. Plaintiff has moved for summary judgment on the counterclaim.

All of these motions were heard in this court on November 26, 1984. After careful consideration of the memoranda, oral argument, and other materials submitted by the parties, the court has determined that defendants' motion for partial summary judgment must be granted in part and denied in part. Defendants' motion to dismiss for lack of jurisdiction and/or for summary judgment is also granted in part and denied in part. Plaintiff's motion for summary judgment on the counterclaim is granted.

## I. Factual Background

Plaintiff was hired by Moore as a collection correspondence clerk in its Credit Department, Western Area Administrative Department, on September 25, 1968. Ms. Hudson, according to all parties, performed her duties competently and creditably, and on June 12, 1974 was promoted to the position of major accounts collector in the credit department. Her work in that department continued, and on August 1, 1975 she was appointed assistant credit manager. On January 1, 1978 she was appointed to the position of credit manager. On September 23, 1980, Moore announced a major reorganization within the company and indicated that most of the functions of the Western Area Administrative Department would be transferred to its facility in Denton, Texas. Plaintiff stayed with Moore until March 15, 1982, when the credit department closed and she was terminated. At that time she received a total of $10,-932.06 in special incentive to stay and severance payments.

Plaintiff alleges that from the time she was promoted to the position of major accounts collector on June 12, 1974 until she was terminated on March 15, 1982, both Moore and the individually-named defendants paid her less than male employees who performed substantially similar work. She also alleges that all of the defendants deliberately prevented her from continuing with the company when the Bay Area facility was closed by refusing to offer her an opportunity to transfer to the Texas facility. Defendants deny that plaintiff was paid less than male employees with comparable duties, and allege that plaintiff was indeed offered opportunities to continue with the company. They contend further that plaintiff deliberately refused opportunities to continue with the company so that she could institute actions for wage discrimination and wrongful termination against defendants.

## II. Defendants' Motion for Partial Summary Judgment

### A. First Cause of Action: Time Limitation on Plaintiff's Equal Pay Act Claims

■ Plaintiff alleges that between the time of her initial promotion to a manage-

ment position at Moore on June 12, 1974 and her termination on March 15, 1982 defendants violated 29 U.S.C. § 206(d)(1) and Cal.Lab.Code § 1197.5 by paying her less than male employees with comparable duties solely on the basis of her sex. She requests damages for the entire period of the alleged violation. Defendants deny plaintiff's claims, and contend in their motion for summary judgment that even if plaintiff should be successful in proving wage discrimination her recovery would be limited to the two-year period prior to the filing of her complaint, or three years if a willful violation is proved. Thus, if plaintiff is successful in proving willful wage discrimination she will, according to defendants, be entitled to recover for claims only dating back to August 5, 1980.

The relevant statutes clearly limit plaintiff's recovery to the two-year period prior to filing of the complaint, or to the three years prior if the wage discrimination is proved willful. 29 U.S.C. § 255(a); Cal. Lab.Code § 1197.5(h). Plaintiff alleges that since the violations were continuous she should be able to recover for the entire period of discrimination. There is no authority for this proposition. Should plaintiff prove her wage discrimination claim, her recovery will thus be limited according to the above-noted statutes.

B. *Second Cause of Action: Plaintiff's Claim for Wage Discrimination and Discriminatory Failure under the CFEHA*

1. Wage Discrimination Claim

Plaintiff alleges that defendants violated the CFEHA, Cal.Gov't Code § 12920 *et seq.*, by failing to pay her wages commensurate with those paid to her male colleagues. Defendants contend that since plaintiff failed to raise this claim before the California Department of Fair Employment and Housing ("DFEH"), she is barred from making that claim now.

California law requires that administrative remedies provided by statute for the redress of certain wrongs must ordinarily be invoked and exhausted before those claims can be brought before the courts. *Bennett v. Borden, Inc.,* 56 Cal.App.3d 706, 709, 128 Cal.Rptr. 627 (1976). Indeed, such exhaustion is a "jurisdictional prerequisite to resort to the courts." *Id.* The CFEHA created the Department of Fair Employment and Housing to administer its provisions and investigate allegations of wrongful conduct. Cal.Gov't Code § 12930–33. In her complaint before the DFEH, plaintiff alleged that she was "subjected to differential treatment, denied an equal opportunity to transfer and subsequently terminated because of my age, 52, and my sex and marital status, Married Female...." (Liem Decl., Exh. "A" at 1). She then particularized her "differential treatment" allegations by specifying the facts surrounding the purportedly wrongful failure to transfer. *Id.* at 1–2. She nowhere alleges a wage discrimination claim, and, therefore, has not exhausted her administrative remedies with respect to that claim.

Plaintiff nevertheless insists that the claim should not now be barred because her allegation of "differential treatment" in the DFEH charge was sufficient to lead to an investigation which would have revealed the wage discrimination claim, even though no specific mention was made of such a claim. She relies for this proposition on a series of decisions of the Court of Appeals for the Ninth Circuit, which held that EEOC charges which did not make specific discrimination allegations were still sufficient to permit those claims to be raised in a court action because an investigation based on the original charges would have "revealed" the allegations made for the first time in the court proceeding. Plaintiff's reliance on these cases is misplaced.

In *Serpe v. Four-Phase Systems, Inc.,* 718 F.2d 935 (9th Cir.1983), the plaintiff brought a Title VII action against her former employer, alleging, among other things, that it had refused to transfer her from the "technical division to the sales division," where employees were paid on a

higher wage scale, solely on the basis of her sex. *Id.* at 936. This specific claim had not appeared in her EEOC charge. In that document she had alleged other specific acts of discrimination against her, and had discussed how females as a class were discriminated against with respect to classifications within the sales department. *Id.* at 936–37. The court concluded that the EEOC charge was "sufficient to sustain [its] subject-matter jurisdiction" over the failure to transfer claim because "an investigation of the charges made in the quoted language would have revealed plaintiff's claim that she did request transfers and that, because she is a woman, her requests were denied." *Id.* at 937. Ms. Serpe made specific reference to discriminatory practices in the sales department in her EEOC charge, while Ms. Hudson's discussion of "differential treatment" in her DFEH charge was based solely on the alleged failure to offer a transfer, with no mention of any wage discrimination.

In *Chung v. Pomona Valley Community Hospital*, 667 F.2d 788 (9th Cir.1982), the plaintiff brought actions under Title VII and 42 U.S.C. § 1981 against his former employer (the hospital) and individual doctors and supervisors, alleging race discrimination. The district court held that most of Chung's Title VII and all of his § 1981 claims were "stale" because he had failed to specifically allege "a pattern of discrimination" in his EEOC charge. The trial court also refused to hear plaintiff's Title VII claims against individual doctors who had not been named in the charge. *Id.* at 789–90. The Court of Appeals reversed, ruling that the EEOC charge "alleged a number of discriminatory acts that suggest[ed] a pattern" of discrimination, rendering the charge "adequate" on that point. *Id.* at 790. The court also held that the allegations contained in the charge were sufficient to suggest a continuing violation under § 1981, and that a more recent Title VII claim not mentioned in the charge was "reasonably related" to the other claims and thus could be heard at trial. The court held finally that the individual doctors not named in the charge "should

have anticipated that Chung would name in his suit those who denied him the promotions mentioned in the charge," and thus could not escape having the claims against them heard. *Id.* at 792. The contrast between Chung's EEOC charge and Ms. Hudson's DFEH charge is marked; while the additional claims Chung alleged bore a direct relationship to what was mentioned in the charge, Ms. Hudson's complaint gave no indication that a wage discrimination claim was or could be contemplated.

Both the *Serpe* and *Chung* courts placed substantial reliance on the reasoning in *Kaplan v. International Alliance of Theatrical and Stage Employees, etc.*, 525 F.2d 1354 (9th Cir.1975). In that case, plaintiff brought a Title VII action against the International and its local, alleging that the union's collective bargaining agreement discriminated against her on the basis of her sex. The International argued that since Ms. Kaplan had not named it in her EEOC charge, the trial court had never acquired jurisdiction over it under Title VII. *Id.* at 1358. The trial court disagreed, and the Court of Appeals affirmed, maintaining that "EEOC charges must be construed with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *Id.* at 1359 (citations omitted). The appeals court reasoned further that "[t]he crucial element of the charge of discrimination is the factual statement contained therein," and held that since the charge identified the International's local as a culpable party, and alleged that one source of the discrimination was the collective bargaining agreement the International negotiated with the studio producers, the EEOC charge was sufficient to apprise the Commission "in general terms, of the alleged discriminating parties and the alleged discriminatory act." *Id.*

None of this is helpful to plaintiff here. The factual statement in the DFEH charge relates solely to her allegations regarding failure to transfer. There is nothing in the charge that would alert the department to a claim of wage discrimination. To conclude that Ms. Hudson's allegation of "dif-

ferential treatment" somehow alerted the department and the defendants to *any* possible discrimination claim that could arise in the future would render the requirement of exhaustion of administrative remedies, including the filing of a specific charge, largely meaningless. In essence all a party would have to do would be to file a charge alleging sex discrimination and leave it to the EEOC to unearth the claims. However, more than inevitable discovery is required. Defendants and the EEOC must be on notice of the general nature of the claims. There was no reason from the charge in this case why they would have had notice of the equal pay claims. The court must therefore grant defendants' motion for summary judgment on this point, and dismiss plaintiff's wage discrimination claim brought under the CFEHA.

### 2. Discriminatory Failure to Transfer Claim

■ Plaintiff's discriminatory failure to transfer claim brought under the CFEHA must be allowed to remain, however. Defendants, who for the purpose of their partial summary judgment motion assume that plaintiff was not offered any opportunities to transfer, allege that plaintiff cannot establish a prima facie case of sex discrimination because she cannot establish that any position for which she was qualified was open at the Denton, Texas facility. (Defendants' Memorandum Supporting Partial Summary Judgment at 11–15). At the same time, in their answer, counterclaim and supporting papers, defendants insist that plaintiff refused more than one opportunity to transfer and remain with the company, which suggests that there were indeed openings for which plaintiff was qualified. (Defendant Moore's Answer to First Amended Complaint and Counterclaim at 12, 16–20; Glover's Decl. at 4). And plaintiff, steadfastly denying that she was ever offered an opportunity to transfer, places substantial reliance on defendants' evidence of offers made in order to demonstrate that there were openings for which she was qualified, but which she was denied the opportunity to accept. (Plaintiff's

Memorandum Opposing Summary Judgment at 4–8). There thus appears to be substantial dispute regarding whether plaintiff was qualified for a transfer and whether she was offered such an opportunity. Summary judgment is thus inappropriate.

Defendants contend, however, that even if their evidence concerning transfer offers for the special assignment and sales positions in Denton constitutes an admission that plaintiff was qualified for those positions, she has still failed to present sufficient evidence to establish a prima facie case of discriminatory failure to transfer because she has not demonstrated that these opportunities remained open and that Moore continued to look for males with qualifications similar to plaintiff's to fill them. (Defendants' Reply Memorandum Supporting Partial Summary Judgment at 6–7). They also make basically the same assertions regarding the collector position in Southern California and the office manager position in San Francisco, and dispute additionally whether these two positions were indeed open positions for which plaintiff was qualified. *Id.* at 8–9.

Defendants' assertions are not entirely without merit. It is true that in order for a plaintiff to establish a prima facie case of sex discrimination in promotions or transfers under Title VII (after which the CFEHA is modeled), she must demonstrate that she applied for an open position, was denied it, and that the employer "continued to look for a male employee with credentials similar to those of plaintiff to fill such a position." *Schulte v. Wilson Industries, Inc.*, 547 F.Supp. 324, 334 (S.D.Texas 1982). *See also, Hudson v. International Business Machines Corp.*, 620 F.2d 351 (2d Cir.), *cert. denied*, 449 U.S. 1066, 101 S.Ct. 794, 66 L.Ed.2d 611 (1980) (plaintiff in race discrimination case failed to demonstrate continued availability of positions or that they were ever given to whites); *Chavez v. Tempe Union High School District No. 213*, 565 F.2d 1087, 1091 (9th Cir.1977); *Betts v. Sperry Div. of Sperry Rand Corp.*, 556 F.Supp. 562, 566 (E.D.N.Y.1983)

(plaintiff in race discrimination suit did not demonstrate availability of position or fact that defendant continued "to seek applicants after plaintiff had been rejected"); *McDonald v. Commonwealth Gas Co.*, 534 F.Supp. 232, 236 (D.Mass.1982) (plaintiff failed to show that he applied for available positions, that he was denied them, and that defendant continued to seek applicants for them thereafter).

There is one serious problem with this argument on the facts in this case. Ms. Hudson vigorously contests the claim that she was offered any position. Although Ms. Hudson has not specifically demonstrated that Moore sought to fill the special assignment or sales positions in Denton with similarly qualified men after they were purportedly offered to her, there is a serious question about the bona fides of those offers. There are sufficient disputes of significant material probative facts to preclude summary judgment.

### C. *Third Cause of Action: Breach of Employment Contract*

■ In her Third Cause of Action, plaintiff alleges that Moore breached its employment contract with her by violating its own express written policies not to discharge employees without good cause and to administer all personnel actions without regard to sex by paying her less than her male counterparts and terminating her without just cause. To the extent that these allegations are based upon a claim of sex discrimination they are preempted by the California Fair Employment and Housing Act.

The CFEHA is the statutory scheme which implements equal employment opportunity policy in California. Cal.Gov't Code § 12920 declares that it is the public policy of the state to "protect and safeguard the right and opportunity of all persons to seek, obtain and hold" employment without discrimination based on, among other things, sex. These provisions are "in no sense declaratory of preexisting common

law doctrine but rather include areas and subject matters of legislative innovation, creating new limitations on an employer's right to hire, promote, or discharge its employees." *Gay Law Students Ass'n v. Pacific Telephone & Telegraph Co.*, 24 Cal.3d 458, 490, 156 Cal.Rptr. 14, 595 P.2d 592 (1979). And in addition to creating these new statutory rights, the act "provide[s] effective remedies which will eliminate such discriminatory practices." Cal.Gov't Code § 12920. These remedies have been deemed to include "all relief generally available in noncontractual actions, including punitive damages...." *Commodore Home Systems, Inc. v. Superior Court*, 32 Cal.3d 211, 221, 185 Cal.Rptr. 270, 649 P.2d 912 (1982).

Plaintiff's effort to incorporate a right created by a comprehensive statutory scheme into a common law action for breach of contract is thus without merit. Indeed, it is clear that "[w]here a new right is created by statute, the party aggrieved by its violation is confined to the statutory remedy if one is provided...." *Strauss v. A.L. Randall Co.*, 144 Cal.App.3d 514, 518, 194 Cal.Rptr. 520 (1983) (quoting *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.*, 65 Cal.App.3d 121, 131, 135 Cal.Rptr. 192 (1976)). *Accord, Mahoney v. Crocker National Bank*, 571 F.Supp. 287, 293 (N.D.Cal.1983). Plaintiff is therefore limited to her claim under the CFEHA to obtain redress for sex discrimination, and the court therefore must strike that portion of paragraph 40 of the complaint, at page 10, lines 19–21, which deals with the contract claim based on sex discrimination. Paragraphs 42, 44, and 49 of the complaint, at pages 11 and 12, are stricken in their entirety. Plaintiff is, however, given leave to amend the complaint to allege breach of contract based upon a theory alleging a policy or practice on the part of Moore of offering transfers or making like arrangements for employees with qualifications and seniority similar to plaintiff's after a facility closure.[1] Because

---

1. Indeed, if plaintiff is unable to make such allegations and present sufficient factual sup-

port for them, she would probably not be able to withstand a future motion for summary judg-

plaintiff is given leave to amend, defendants' motion for summary judgment on this point is denied.

### D. *Fourth Cause of Action: Breach of Implied Covenant of Good Faith and Fair Dealing*

■ Plaintiff's claim for breach of the covenant of good faith and fair dealing is likewise preempted by the CFEHA to the extent that it attempts to incorporate allegations based on sex discrimination. Paragraph 54 of the complaint, at page 13, is therefore stricken in its entirety. Plaintiff is given leave to amend in order to allege bad faith breach of the type of agreement discussed in the previous section of this Order.[2] Defendants' motion for summary judgment on this point is therefore denied.

### E. *Fifth Cause of Action: Interference with Advantageous Economic Relations*

■ In her Fifth Cause of Action, plaintiff alleges that the individual defendants, McArthur, Glover, McLean and Clark, tortiously interfered with her advantageous economic relations with Moore by paying her less than her male colleagues who performed essentially the same type of work, and refusing to offer her an opportunity to transfer without good cause and in violation of the CFEHA. Moore is accused of having "ratified the wrongful conduct" of the individual defendants and of therefore, apparently, also being guilty of wrongful interference with economic relations. The tortious interference claims against McArthur, Glover, McLean and Clark cannot stand. California law protects an employee who has induced the breach of an employment contract or otherwise interfered with economic relations on behalf of his employer. *See Los Angeles Airways, Inc. v. Da-*

*vis,* 687 F.2d 321, 326 (9th Cir.1982). *See also, Olivet v. Frischling,* 104 Cal.App.3d 831, 840–41, 164 Cal.Rptr. 87 (1980). This is true even when the agent or employee also has possible personal motives for inducing the breach in addition to his goal of benefitting the principal or employer. *Los Angeles Airways,* 687 F.2d at 328. Plaintiff attempts to circumvent this principle with the blanket allegation that the individual defendants were "acting by virtue of their own motives as individuals," and not at all in the course of their employment at Moore when they made decisions adverse to plaintiff's employment. *See,* Complaint at 15, ¶ 61. All of the individual defendants deny this, and assert that they acted solely on behalf of the company and under the direction of superiors in making these types of decisions. (Clark Decl. at 2–3); (Glover Decl. at 3–4); (McArthur Decl. at 3); (McLean Decl. at 2–3). Plaintiff offers no evidence to rebut these declarations, and defendants' motion for summary judgment on this point must therefore be granted. If at some point in the future defendants renege on this assertion and claim they were not acting on behalf of their employer, plaintiff may move to vacate this portion of the order for summary judgment.

### III. *Defendants' Motion to Dismiss for Lack of Jurisdiction and/or for Summary Judgment*

■ Defendants McArthur, Glover and Clark contend that this court should dismiss the claims against them because it lacks in personam jurisdiction over them. These same defendants and defendant McLean[3] argue additionally that the doctrine of "managerial immunity" shields them from plaintiff's CFEHA and tortious interference claims. The motion to dismiss for

---

ment. *See, e.g., Hepp v. Lockheed-California Co.,* 86 Cal.App.3d 714, 717, 150 Cal.Rptr. 408 (1978) (plaintiff survived defendant's motion for summary judgment only because company had specific policy regarding recall rights of laid-off employees).

**2.** In order to make such a claim, plaintiff must clearly satisfy the test articulated in *Wallis v.*

*Superior Court,* 160 Cal.App.3d 1109, 1118, 207 Cal.Rptr. 123 (1984), and discussed in Part IV–B of this Order.

**3.** McLean, a resident of California, does not contest this court's general jurisdiction over him.

lack of jurisdiction is denied. The motion for summary judgment is denied insofar as it relates to the wage discrimination charge under the CFEHA; it is granted insofar as it relates to the tortious interference claim for the reasons stated in Part II–E of this Order.

Personal jurisdiction may be exercised by the state and federal courts only if a defendant has sufficient "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–343, 85 L.Ed. 278 (1940)). *See also, Rush v. Savchuk*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980); *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280 (9th Cir.1977). To a significant extent, this inquiry involves the question of whether a defendant could "reasonably anticipate being haled into court" in the forum state to respond to claims made against him there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980).

In *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the Supreme Court considered whether two employees of a newspaper published in Florida and widely circulated in California could be sued in the latter state along with the newspaper in a libel action. Each employee was a resident of Florida who, aside from brief business or pleasure trips, had no relevant contacts with California. *Id.* 104 S.Ct. at 1485. The Court nevertheless concluded that they were subject to the limited personal jurisdiction of the California courts, reasoning that "petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." *Id.* 104 S.Ct. at 1487. *See also, Jones v. Calder*, 138 Cal.App.3d 128, 133–34, 187 Cal.Rptr. 825 (1982), *aff'd sub nom. Calder v. Jones, supra.* In sum,

since the defendants had taken direct part in allegedly wrongful conduct which had its "effects" in California, it was wholly reasonable for them to expect to be "haled into court" there. *Calder v. Jones*, 104 S.Ct. at 1487. Admittedly *Calder* involved a tort claim. However, the claims against the individual defendants here are closely analogous to tort claims and the minimum contacts analysis that has grown up around them.

McArthur, Glover and Clark insist that since they are not residents of California and currently have no contacts with the state other than in their corporate capacities, they thus cannot be subject to the courts here. This contention was made by the defendants in *Calder*, was rejected by the Court in that case, and must be rejected by this court now. McArthur, Glover and Clark are each alleged to have been direct participants in conduct made wrongful by statute that was "intentionally directed" at plaintiff, a resident of California. Furthermore, McArthur and Glover worked and resided in California during most of the time when the wrongful acts are alleged to have occurred. They thus cannot convincingly argue that personal jurisdiction over them would be unreasonable when plaintiff's claims arose out of acts they committed in California. *See Rosenblatt v. American Cyanamid Co.*, 86 S.Ct. 1, 2, 15 L.Ed.2d 39 (Goldberg, J. denying stay pending appeal), *appeal dismissed,* 382 U.S. 110, 86 S.Ct. 256, 15 L.Ed.2d 192 (1965).

*Forsythe v. Overmyer*, 576 F.2d 779 (9th Cir.1978), relied upon heavily by defendants, is not to the contrary. In that case, the court held that Overmyer, an Oregon resident, was not subject to the personal jurisdiction of the courts in California for his liability on a guaranty of certain obligations owed by a corporation of which he was chairman of the board and chief executive officer. The court held that "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." *Id.* at 783–84.

It must be noted, however, that Overmyer was not charged with wrongful acts similar to the torts alleged in *Calder* or the statutory wrongs alleged by plaintiff in this case. *Calder* makes it clear that the sweeping language used by the court in *Forsythe* does not apply when an employee-defendant is alleged to have been a direct participant in wrongful acts directed at a plaintiff in the forum state. Defendants' dismissal motion is therefore denied.

■ The court must also deny defendants' motion for summary judgment on the CFEHA wage discrimination claim. It is true, as this court noted in Part II–E of this Order, that a shield of immunity protects employees who interfere with contractual relations on their employer's behalf, but there is no indication that this immunity extends to other wrongful acts committed by employees, even though they may have been acting in their employment capacities. *See Compston v. Borden, Inc.*, 424 F.Supp. 157, 158 (S.D.Ohio 1976) (supervisor of Borden's maintenance department could be sued as an employer under provisions of Title VII).[4]

The court must also note, however, that there is little for plaintiff to gain by maintaining her claims against the individual defendants. As was noted in Part II–C of this Order, the relief available against Moore for violation of the CFEHA is comprehensive. *See Commodore Home Systems*, 32 Cal.3d at 221, 185 Cal.Rptr. 270, 649 P.2d 912. Although the court does not have grounds on which to dismiss the claims against the individual defendants, except for the claim based on tortious interference, the interests of economy and efficiency should compel plaintiff to pursue her claims only against Moore from whom she can obtain complete relief.

## IV. *Defendant's Counterclaim*

In conjunction with its Answer to plaintiff's First Amended Complaint, defendant Moore filed a counterclaim against plaintiff. The counterclaim alleges that plaintiff violated certain statutory obligations imposed by the California Labor Code, and breached the "duty of good faith and fair dealing" and other duties imposed by her "employment relationship," by denying the existence of a contract in which she allegedly agreed to be terminated in return for the receipt of severance benefits. Plaintiff made a motion for summary judgment on the counterclaim, contending that the assertions made by defendant lack legal or factual foundation. Moore responded by asserting that the declarations supporting plaintiff's motion are defective, and that the facts relevant to the issues involved are clearly disputed. For the reasons discussed below, the court will treat plaintiff's summary judgment motion as a motion to dismiss and will dismiss the counterclaim.

### A. *Defects in Plaintiff's Summary Judgment Motion; Treatment of Motion for Summary Judgment as Motion to Dismiss*

■ Much of Moore's memorandum in opposition to plaintiff's summary judgment motion deals with alleged technical deficiencies and factual disputes that, in defendant's view, are fatal to that motion. Defendant does appear to be correct in asserting that much of the evidence offered by plaintiff in support of her motion is inadmissible.[5] It is also clear, as has al-

---

4. Defendants also contend that their summary judgment motion should be granted since they were not named in plaintiff's DFEH charge. It is clear to this court that while the charge is not sufficient to give this court jurisdiction over the CFEHA wage discrimination claim, it is indeed sufficient to lead to an investigation that would have uncovered the individual defendants as being among those responsible for the discrimination she alleges in the charge. In fact, defendant McLean was specifically named in the charge. *See Chung*, 667 F.2d at 792.

5. The declaration of plaintiff's counsel, Ms. Schlaak, refers to a stack of unauthenticated documents attached to plaintiff's motion. (Schlaak Decl. at 1–2). Ms. Schlaak offers no indication that she has any personal knowledge regarding the source of the documents, their purpose, interpretation or authenticity. It is clear that the mere attachment of a writing to an affidavit or declaration does not authenticate it; since this declarant would not be able to testify, from her own personal knowledge, regarding the genuineness of these attached doc-

ready been noted in this Order, that the critical facts at the core of this litigation are very much in dispute, making summary judgment inappropriate.

■ The fact that the counterclaim cannot be disposed of on summary judgment does not put an end to the matter, however. A district court is authorized to treat a defective motion for summary judgment as the functional equivalent of a motion to dismiss. *Schwartz v. Compagnie General Transatlantique*, 405 F.2d 270, 273–74 (2d Cir.1968); *Mercantile National Bank at Dallas v. Franklin Life Ins. Co.*, 248 F.2d 57, 59 (5th Cir.1957). Because defendant has failed to state a cause of action under either the statutes it recites or the common law theories it presents, the court must dismiss the counterclaim.

## B. *Dismissal of the Counterclaim*

Moore alleges that plaintiff breached the implied covenant of good faith and fair dealing, a duty of loyalty, and California Labor Code §§ 2854, 2856, 2857, 2858, 2859, and 2865 by rejecting opportunities to remain with Moore, accepting special termination payments, and then initiating actions claiming that her termination was wrongful. Each of these allegations is without basis in law. Nor does defendant allege facts in its counterclaim sufficient to state any claim under these theories.

■ It is clear that every contract, including the employment contract, contains an implied covenant of good faith and fair dealing. *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.*, 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984); *Universal Sales Corp. v. California Press Mfg. Co.*, 20 Cal.2d 751, 771, 128 P.2d 665 (1942). It is also clear that not every breach gives rise to a tort cause of action. No bright line has yet emerged distinguishing when tort damages are proper; the law is still evolving. However, there is no law that even suggests defendants may be entitled to tort damages. *Seaman's*, 36 Cal.3d at 768, 206 Cal.Rptr. 354, 686 P.2d 1158.

Defendants rely heavily on *Seaman's;* they have tortured any fair reading of *Seaman's*. The court in *Seaman's* held that in the context of an *ordinary commercial contract*, where the parties are of "roughly equal bargaining power," the wronged party can recover tort damages when the other party denies, "in bad faith and without probable cause, that the contract exists." *Id.* at 769, 206 Cal.Rptr. 354, 686 P.2d 1158.

The *Seaman's* court also recognized that tort remedies are available for breach of the covenant in insurance contracts and other agreements, including employment contracts, which are "characterized by elements of public interest, adhesion, and fiduciary responsibility." *Id.* at 768–69 and n. 6, 206 Cal.Rptr. 354, 686 P.2d 1158. In *Wallis v. Superior Court*, 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984), the court of appeal outlined the elements that must be present in a contract to serve as the "predicate to tort liability" for breach of the covenant:

(1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the

uments, the declaration and the documents are inadmissible, and the motion is rendered defective. *See, United States v. Dibble*, 429 F.2d 598, 602 (9th Cir.1970); *Local Union No. 490 v. Kirkhill Rubber Co.*, 367 F.2d 956, 958 (9th Cir.1966).

The submission of inadmissible hearsay evidence along with a motion for summary judgment also renders that motion defective. Much of the information contained in plaintiff's own declaration and that of her former colleague,

Albert Miller, appears to be inadmissible hearsay and opinion evidence. *See,* (Hudson Decl. at 2); (Miller Decl. at 2–3). Neither party offers any basis or foundation for his or her opinions on the discussed matters, and it is clear that this type of opinion and Hearsay testimony cannot be used to support plaintiff's motion for summary judgment. *DePinto v. Provident Security Life Ins. Co.*, 374 F.2d 50, 55 (9th Cir.), *cert. denied,* 389 U.S. 822, 88 S.Ct. 52, 19 L.Ed.2d 74 (1967).

inferior party "whole"; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability.

These criteria having been met, the party in the stronger position has a heightened duty not to act unreasonably in breaching the contract, and to consider the interest of the other party as tantamount to its own.

*Id.* at 1118, 207 Cal.Rptr. 123. The *Wallis* court suggests that these characteristics are "present in most employer-employee relationships." *Id.* at 1116 n. 2, 207 Cal. Rptr. 123.

It is thus clear that only "the party in the stronger position," i.e., the employer, can be held liable in tort for breach of the covenant of good faith and fair dealing implied in an employment contract. Moore's effort to state such a claim against plaintiff is wholly without merit. According to Moore, Ms. Hudson breached the implied covenant by, in effect, denying the existence of a "contract" by which she took special severance benefits in return for her agreement to be terminated. This was the theory espoused at oral argument. One can search in vain for any mention of such a contract in the counterclaim. The counterclaim proceeds on a wholly different theory. Even if the theory that emerged at the hearing was to be taken seriously there are fatal defects in it.

First, there is little or no evidence that plaintiff made any such agreement, and even if she had, such a contract would clearly violate public policy. Second, the authority upon which Moore bases this allegation, the *Seaman's* case, was very carefully limited in its application to "ordinary commercial contracts" where the parties are of "roughly equal bargaining positions." 36 Cal.3d at 769, 206 Cal.Rptr. 354, 686 P.2d 1158. Thus, even if Ms. Hudson did indeed arrive at such an arrangement with Moore, and such an agreement did not violate public policy, her supposed denial of

it would still not give rise to tort liability for breach of the implied covenant.

■ Defendant Moore also insists, however, that plaintiff violated a duty of loyalty owed to Moore by refusing to take opportunities to remain with the company, denying the supposed agreement under which she received severance benefits, and by instituting actions for wrongful discharge. It is true that employees, especially those in management or fiduciary positions, are under a duty of loyalty to the employer. *See, e.g., Dana Perfumes, Inc. v. Mullica,* 268 F.2d 936, 937 (9th Cir.1959) (law imposes on an employee implied conditions of loyalty to the employer); *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 249, 67 Cal.Rptr. 19 (1968) (directors, officers and managing employees of plaintiff corporation owed it "fiduciary duties"); *Paramount Mfg. Co. v. Mohan,* 196 Cal.App.2d 372, 373, 16 Cal.Rptr. 417 (1961) (employee or agent must account to employer for secret profits and benefits received in course of employment); *Oliphant v. "Home Builders",* 34 Cal.App. 720, 723, 168 P. 700 (1917) (agent of corporation acting as fiduciary owed duty of full and complete disclosure to superiors regarding business conducted on corporation's behalf). None of defendant's allegations concerning plaintiff's conduct, however, even remotely resemble any of the breaches of employee loyalty dealt with in the cases or contemplated by the various Labor Code sections alleged in the counterclaim. All Moore asserts is that Ms. Hudson "undermined her employment" and breached her duty of loyalty by refusing to stay with the company and then alleging that her termination had been wrongful after she had accepted severance benefits. First, this court is unaware of any legal authority which makes the "undermining" of one's own employment tortious conduct. Second, as has already been noted, there is little or no evidence that plaintiff specifically agreed never to contest her termination by accepting severance benefits. And even if she had, such an agreement would clearly violate public policy notions of fairness and

could certainly never be imposed upon her as a duty of loyalty.

Defendant's effort to state claims under the various sections of the California Labor Code are also meritless for the following reasons. Section 2854 requires an employee to "use ordinary care and diligence" in the course of her employment. Defendant nowhere alleges that plaintiff was anything but a useful and diligent employee. In fact, at oral argument it was conceded that plaintiff remained on the job until closure and performed her duties satisfactorily. Sections 2856 and 2857 require an employee to comply with her employer's directions and perform her services "in conformity to the usage of the place of performance." Defendant nowhere alleges that plaintiff did otherwise and again concedes her performance was satisfactory. Sections 2858 and 2859 require an employee to use a reasonable degree of skill in fulfilling her responsibilities. Defendant nowhere alleges that plaintiff did otherwise and again concedes her performance was satisfactory. Section 2865 provides that an employee is liable to the employer for any damages caused by her negligence. Defendant nowhere alleges that plaintiff caused it damage by her negligence on the job and again concedes her performance was satisfactory.

The sum total of Moore's common law and statutory claims is that Ms. Hudson refused to continue with the company and then, in violation of a supposed arrangement, asserted that her discharge had been wrongful. These allegations totally fail to state any claims.

In view of the absence of any facts to support the claims contained in the counterclaim, the evolving nebulous theory spun out for the court at the time of the hearing which differed from the theory in defendants' papers, the wholly unsubstantiated claim for compensatory damages and the unconscionable claim for $4 million dollars punitive damages against an unemployed woman over 50 years of age whose husband is living on retirement, this court can find no explanation for the counterclaim other than an overzealous attempt on the part of defendants' counsel to intimidate this and other plaintiffs from pursuing wrongful discharge litigation.

It does not appear that there is any set of facts upon which a claim can be based in the law or any reasonable extension of existing law. It does appear that the counterclaim was interposed to harass the plaintiff and scare off other litigants. Employers and the lawyers who represent them may find the surge in wrongful discharge litigation irksome. If the litigation is frivolous, they are not without remedy. That remedy is to seek an early dismissal of the action and appropriate sanctions; it is not to respond with a wholly frivolous counterclaim brought with the full weight and resources of the employer behind it. Such conduct will not be tolerated by this court. It is an undue burden to the court and it flies in the face of clearly enunciated state policies to protect employees and their right to vindicate those policies. Accordingly, this matter is set down for further proceedings in which defendant Moore and its attorney shall show cause why sanctions should not be imposed pursuant to Fed.R.Civ.P. 11.

## V. *Conclusion*

Based on the foregoing discussion, defendants' motion for partial summary judgment is granted in part and denied in part as follows:

1. Summary judgment is granted as to the time limitation on plaintiff's Equal Pay Act claims in her first cause of action;

2. Summary judgment is granted as to plaintiff's CFEHA wage discrimination wage, and denied as to her discriminatory failure to transfer claim in her second cause of action;

3. Summary judgment is denied with respect to the third and fourth causes of action. Plaintiff is given leave to amend within twenty (20) days of the date of this order, as noted in Parts II–C and II–D of this Order;

4. Summary judgment is granted to the individual defendants with respect to the fifth cause of action. The individual defendants' motion to dismiss for lack of jurisdiction is denied. The individual defendants' motion for summary judgment is denied insofar as it relates to the wage discrimination claim brought under the CFEHA, and granted insofar as it relates to the tortious interference claim;

5. Defendant Moore's counterclaim is dismissed.

This matter is set down for hearing on February 4, 1985 at 10:30 A.M. for an order to show cause why sanctions should not be imposed upon defendant Moore and its attorneys pursuant to Fed.R.Civ.P. 11. Plaintiff shall file her papers in support of the motion on or before January 14, 1985. Defendant Moore and its counsel shall file their response on or before January 28, 1985.

IT IS SO ORDERED.

### SUPPLEMENTAL OPINION

■ In accordance with this court's order to show cause why sanctions should not be imposed against attorneys for defendants pursuant to Fed.R.Civ.P. 11, the parties have filed memoranda and arguments have been heard. Having considered the foregoing and for the reasons set forth below, the court concludes that sanctions in the amount of $14,692.50 shall be imposed jointly and severally against the law firm of Littler, Mendelson, Fastiff & Tichy and the individual attorneys Wesley J. Fastiff, Henry D. Lederman and Maureen E. McClain for the filing and pursuit of spurious counterclaims.

*Background*

The procedural history of this action is fully described in the January 4, 1985 order.

In dismissing the counterclaim this court found that, given the facts of the case, the counterclaim was not based on existing law or upon "a good faith argument for the extension ... of existing law." The court

also found that it was likely that the counterclaim which sought some $4 million in punitive damages from the plaintiff, an unemployed woman over 50 years of age whose husband is living on retirement, was interposed to harass the plaintiff and intimidate potential litigants from bringing wrongful discharge claims. Accordingly, at the hearing this court followed the mandate of Rule 11 and issued a sua sponte order to show cause why defendants' attorneys should not pay sanctions. The lack of basis for defendants' counterclaim and the shortcomings of defendants' arguments have already been discussed in detail by this court in its previous order and will not be repeated here. The following discussion will focus only upon the arguments presented in response to the order to show cause regarding sanctions.

*Discussion*

### A. *Nonissue*

Defendants make much of the contention that counterclaims may be asserted against a Title VII plaintiff. That is not in dispute. Nowhere in the court's lengthy order was it suggested otherwise.

The issue is whether the counterclaims are meritorious.

### II. *The statutory counterclaims*

It is appropriate first to dispose of the various counterclaims based on state labor statutes. Defendants offer nothing new to support the legitimacy of these claims. Instead they seek to bolster the breach of covenant of good faith and fair dealing claim with cases involving fiduciary obligations of employees. It appears that defendants believe these cases support their statutory and common law theories. The cases support none of them and are wholly inapposite for the reasons explained below.

In *Dana Perfumes, Inc. v. Mullica,* 268 F.2d 936 (9th Cir.1959) there was no cause of action by the employer. The employer merely sought to set off commissions claimed by a former salesman pursuant to a written agreement because of his failure to perform certain duties.

The fiduciary duties found owing to an employer in *Diodes, Inc. v. Franzen,* 260 Cal.App.2d 244, 67 Cal.Rptr. 19 (1968) were by reason of the employees' positions as directors and officers. The employees, president and vice-president, were charged with misappropriation of trade secrets and unfair competition.

In *Paramount Manufacturing Co. v. Mohan,* 196 Cal.App.2d 372, 16 Cal.Rptr. 417 (1961) the employee was alleged to have retained secret profits. *Bancroft-Whitney Co. v. Glen,* 64 Cal.2d 327, 49 Cal.Rptr. 825, 411 P.2d 921 (1966) and *Sequoia Vacuum Systems v. Stransky,* 229 Cal.App.2d 281, 40 Cal.Rptr. 203 (1964) are classic corporate opportunity cases. A director and officer in *Sequoia Vacuum Systems* and a president and director in *Bancroft-Whitney* entered into competing enterprises while still in the employ of their respective companies.

These cases bear no resemblance to the facts at bar.

III. *The counterclaim for breach of the covenant of good faith and fair dealing*

Defendants have failed to come forward with any persuasive authority for this counterclaim. The authorities cited do not support any plausible extension of existing law.

One of the many cases upon which the court based its dismissal of the defendants' counterclaim was *Wallis v. Superior Court,* 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984).[1] Defendants object to the court's use of *Wallis* on the grounds that it (1) was decided before the filing of the counterclaim, and (2) is inapplicable.

However, *Wallis* does not break new ground, at least insofar as is significant here. *Wallis* spells out the factors that must be present to permit a finding of tort liability in a breach of contract and covenant of good faith and fair dealing case. *See id.* at 1118, 207 Cal.Rptr. 123. The decision merely contains a more refined explanation of earlier cases. The factors are the same as those discussed in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). They are identical to the factors detailed in earlier insurance cases such as *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 820, 169 Cal.Rptr. 691, 620 P.2d 141 (1979), *appeal dismissed, cert. denied,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980). *Seaman's* and *Wallis* draw on the insurance contract relationship for the special contractual relationship giving rise to tort liability. Furthermore, the *Wallis* factors are a general statement applicable to any employment-related contract.

Defendants also find encouragement for their position in *Seaman's. Seaman's* has nothing to do with the employer-employee relationship. It considers under what circumstances a tort remedy may exist for breach of an ordinary commercial contract where the parties are of roughly equal bargaining power. It does describe the circumstances under which special contractual relationships may justify tort liability, again using the insurance relationship as the paradigm.

*Seaman's* notes that the employment relationship recently has received similar consideration because of "elements of public interest, adhesion and fiduciary responsibility." *Seaman's,* 36 Cal.3d at 768, 206 Cal. Rptr. 354, 686 P.2d 1158. In this context it cites to a footnote in *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 179 n. 12, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980), where the court observed that other jurisdictions have treated the wrongful discharge of an

---

1. Defendants argue that the court's reliance on *Wallis,* 160 Cal.App.3d 1109, 207 Cal.Rptr. 123, is improper because the case was not published until after the filing of the counterclaim. The court, however, need not rely on *Wallis* in finding the counterclaim baseless in both law and fact. Despite the use of *Wallis,* the court's decision in dismissing the counterclaim certainly does not depend on that one case. Even without *Wallis* this court's previous findings as described in the Memorandum Decision and Order are complete and applicable in fully rejecting the arguments now presented by defendants.

employee as "violative of the *employers'* 'good faith and fair dealing obligations'" (emphasis added). The claim in *Tameny* was characterized as wrongful discharge and the court found it unnecessary to reach the question of tort liability for a breach of the covenant of good faith and fair dealing, concluding that the elements of the two claims are essentially the same. *Tameny* talks solely of duties and obligations running from the employer because of the employer's superior position and the need to protect employees. The evolution of this protection arises from "a continuing judicial recognition of the fact, enunciated by this court more than 35 years ago, that '[t]he days when a servant was practically the slave of his master have long since passed.'" *Id.* at 178, 164 Cal.Rptr. 839, 610 P.2d 1330 (quoting *Greene v. Hawaiian Dredging Co.*, 26 Cal.2d 245, 251, 157 P.2d 367 (1945)).

Not only do defendants' theories run directly contrary to the developing body of law in the employment field, they would set the clock back to the days described in *Tameny*. The employee who dared to challenge her employer's practices would be branded disloyal and subject to tort liability. When the counterclaim is carefully scrutinized there is little more to it than that.

Defendants also point to two new cases. There is no solace for them in either case. Defendants quote from a portion of *Rulon-Miller v. International Business Machines Corp.*, 162 Cal.App.3d 241, 247, 208 Cal.Rptr. 524 (1984) that discusses the principles underlying the covenant of good faith and fair dealing in the employment context, emphasizing the requirement that parties deal fairly and openly with one another. Defendants neglect to mention the sentences immediately following the quoted portion which state:

> At least two of those considerations [implicit in contractual and certain other relationships] are relevant herein. The duty of fair dealing by an *employer* is, simply stated, a requirement that like cases be treated alike. Implied in this, of course, is that the company, if it has rules and regulations, apply those rules and regulations to its employees as well as affording its employees their protection.... Thus, the fair dealing portion of the covenant of good faith and fair dealing is at least the *right of an employee* to the benefit of rules and regulations adopted for his or her protection.

*Id.* at 247–48, 208 Cal.Rptr. 524 (emphasis added). *Rulon-Miller* makes no mention of any duties running from the party in the inferior bargaining position that would give rise to a tort cause of action in favor of the employer.

The second new case cited by defendants is *Quigley v. Pet, Inc.*, 162 Cal.App.3d 223, 208 Cal.Rptr. 394 (1984). *Quigley* makes it clear that tort damages are not recoverable for breaches of contract and the covenant of good faith and fair dealing "unless an exception is found which is not foreign to those already approved." *Id.* at 237, 208 Cal.Rptr. 394. Nothing could be more foreign to the employment relationship exception carved out by California courts than the notion offered by defendants herein.

Defendants attempt one further argument to justify their position. They assert that plaintiff was a corporate manager and did not stand in the unequal bargaining position found in the ordinary employee-employer relationship. Thus, they claim, she is bound by obligations of law and not by a contract of adhesion. The argument is absurd. Plaintiff was a credit manager. There are no allegations that she had a contractual relationship different from any other employee. She does not stand in the position of officer or director such as in the fiduciary cases discussed above. The statutory obligations provide no basis for this assertion. Moreover, the argument is dissembling. Defendants never alleged a specific contract in its counterclaim. The suggestion in that pleading is that plaintiff's good faith and fair dealing obligation ran with her employment relationship. At the first hearing defendants claimed the contract in question was the severance agree-

ment. Now defendants contend it springs from obligations imposed by law.

Finally, subsequent to oral argument defendants called to this court's attention, by way of a letter memorandum, the case of *Commercial Cotton Co. v. United California Bank*, 163 Cal.App.3d 511, 209 Cal. Rptr. 551 (1985). This is perhaps the greatest degree of candor defendants have displayed in these proceedings. Defendants note that *Commercial Cotton* recognizes another special relationship from which the tort of the breach of the covenant of good faith and fair dealing may arise. However, the duty runs the other way. The defendant bank was held liable in tort for asserting "spurious defenses" and "stonewalling" in response to a depositor's efforts to recover losses. Again, the special relationship justifying the depositor's claim was "characterized by elements of public interest, adhesion and fiduciary responsibility." *Id.* at 516, 209 Cal.Rptr. 551.

IV. *Defendants have made no attempt to justify the outlandish amount of damages sought*

Defendants' counterclaim sought an unconscionable $4.2 million in damages. This amount has never been explained nor justified by the defendants. Defendants have presented no evidence as to the nature of the damages they allegedly incurred or as to the financial ability of the plaintiff to sustain such a large punitive damage award, which would even come close to providing a reasonable basis for such an exorbitant damage claim. Defendants do offer that they "believed that the Company legitimately could make out a claim for attorneys' fees and costs of litigation as a basis for compensatory damages." Defs. Opposition at 15. The defendants' counterclaim, however, clearly sought "costs of suit, attorneys' fees and interest" *separately and in addition to* the $200,000 in compensatory damages and $4,000,000 in punitive damages. *See* Counterclaim at 20. The explanation is wholly lacking in plausibility.

The nature and lack of justification for defendants' unconscionable damage claim raises a strong inference that the defendants' motive in bringing the counterclaim was to harass the plaintiff and to deter similar actions from being brought. Rule 11 of the Federal Rules of Civil Procedure provides that a lawyer's signature certifies that the paper "is not interposed for any improper purpose, such as to harass ..." While the court's finding of a lack of any factual or legal basis for the counterclaim is sufficient to justify the imposition of sanctions, it is also appropriate for the court to consider the defendants' purpose in bringing the counterclaim. *See WSB Electric v. Rank & File Com. To Stop 2-Gate Sys.*, 103 F.R.D. 417, 420–21 (N.D. Cal.1984). This court's previous order in this action clearly stated that "it does appear that the counterclaim was interposed to harass the plaintiff and scare off other litigants." Memorandum Decision and Order at 27. Yet even with this clear statement of the court's intent, defendants have not presented any convincing evidence that would indicate any other motive behind the counterclaim.

*Conclusion*

Given that this court has found that the defendants' counterclaim was brought without the support of any reasonable factual or legal basis and that the defendants' motive for bringing the counterclaim was to harass the plaintiff into dropping her suit and to deter others from bringing suit, this court will grant sanctions under Fed.R. Civ.P. 11 jointly and severally against defendants' law firm Littler, Mendelson, Fastiff & Tichy and against the individual attorneys who signed the original counterclaim Wesley J. Fastiff, Henry D. Lederman and Maureen E. McClain.

Sanctions will be imposed in an amount equivalent to all of plaintiff's costs in responding to defendants' counterclaim and the subsequent motion for sanctions. Plaintiff's counsel has provided the court with declarations as to their fees for the defense of the counterclaim. The court has reviewed these declarations and determined

 

that sanctions shall be awarded in the total amount of $14,692.50. This total shall be divided as follows: Marilyn MacRae $8,910.00 and Ann L. Schlaak $5,782.50. Payment of these sanctions shall be made within thirty (30) days of the date of this order.

This is not the first time that a judge of this District has imposed sanctions on this firm. *See Huettig & Schromm v. Landscape Contractors Council,* 582 F.Supp. 1519, 1521–23 (N.D.Cal.1984). Furthermore, counsel Lederman was previously warned by this court about the assertion of unjustifiable claims and defenses. If these counsel persist in stepping over the line of permissible advocacy, more severe sanctions must be considered. Opposing parties and their counsel, the firm's own clients and the court should not be forced to expend time and money on these lawyers' reckless adventures.

IT IS SO ORDERED.