Ida HUDSON, Plaintiff/Appellee,

v.

MOORE BUSINESS FORMS, INC., a corp., Joe McArthure, et al, Defendants,

and

Law Firm of Littler, Mendelson, Fastiff & Tichy, a Professional Corp., and the individual attorneys and members of that firm, Wesley J. Fastiff, Maureen E. McClain & Henry D. Lederman, attorneys, Appellants.

No. 85–2176.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 8, 1987.

Decided Sept. 2, 1987.

Gary P. Scholick and Peter R. Boutin, San Francisco, Cal., for appellants.

J. Kenneth Donnelly and Marilyn Mac Rae, Oakland, Cal., for plaintiff/appellee.

Before CHAMBERS, TANG and NELSON, Circuit Judges.

NELSON, Circuit Judge:

Ida Hudson filed suit against her former employer, Moore Business Forms, Inc. ("Moore"), alleging wrongful discharge and sex discrimination. Moore retained the law firm of Littler, Mendelson, Fastiff & Tichy ("Littler") to represent it. Littler filed an answer and a counterclaim that alleged tor-

tious conduct by Hudson in connection with her discharge, and requested $200,000 in compensatory damages, $4 million in punitive damages, costs, and attorneys' fees. The district court dismissed the counterclaim, conducted a hearing to determine if Rule 11 sanctions were appropriate, and imposed sanctions of $14,692.50 against Littler, equal to the amount Hudson spent to defend against the counterclaim and the subsequent motion for sanctions. Littler appeals the sanctions ruling. We note jurisdiction under 28 U.S.C. § 1291 (1982).

We believe that the district court erred in concluding that certain of Littler's claims were wholly frivolous. However, because we find that the request for $4.2 million in damages against Hudson in Moore's counterclaim had no plausible factual or legal basis and was made for the improper purpose of harassing Hudson, we affirm in part, vacate the sanction award, and remand to the district court to reconsider the appropriate amount of the award in light of our holding.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts of the lawsuit underlying the sanction award against Littler are set out in detail in the district court's published memorandum decision and order. *Hudson v. Moore Business Forms, Inc.*, 609 F.Supp. 467 (N.D.Cal.1985). The conclusions regarding the sanction hearing are separately recorded in a published supplemental opinion. *Id.* at 481–85.

The key facts are as follows. Moore hired Hudson in 1968 as a collection correspondence clerk. *Id.* at 470. After a number of years of competent service, she eventually became the credit manager of the Credit Department, in the Western Area Administrative Department, in 1978. *Id.* In 1980, Moore announced a major reorganization that necessitated the transfer of most of the personnel in Hudson's department to a facility in Denton, Texas. *Id.* The facts are in dispute as to whether Hudson was qualified for a transfer or was offered the opportunity to do so. *Id.* at 473. It is undisputed, however, that Hud-

son remained with Moore until 1982 when her department closed and she was terminated. *Id.* at 470. She received $10,932.06 in special incentive-to-stay and severance payments.[1]

Following her termination, Hudson filed suit against Moore alleging various federal and pendent state law claims, including breach of her employment contract and breach of the implied covenant of good faith and fair dealing. *Id.* at 469–70. Hudson's principal allegations were that she was paid less than male employees performing substantially similar work, and that Moore deliberately prevented her from continuing to work at the company by refusing to offer her the opportunity to transfer to the Texas offices. *Id.* at 470.

Moore, who hired Littler to represent the company, removed the action to federal court and filed an answer and a counterclaim. *Id.* Moore denied that Hudson received unequal pay for comparable duties of male employees and alleged that it offered Hudson the opportunity to transfer to Texas. In its counterclaim, which prompted the Rule 11 sanction at issue in this appeal, Moore contended that Hudson breached the implied covenant of good faith and fair dealing, a duty of loyalty, and various sections of the California Labor Code, by deliberately refusing offers to transfer to Texas in order to initiate actions for wage discrimination and wrongful termination against Moore. *Id.* In addition, Moore requested " 'costs of suit, attorneys' fees and interest' " as well as $200,000 in compensatory damages and $4 million in punitive damages. *Id.* at 484.

Moore filed a motion for partial summary judgment on Hudson's complaint and Hudson filed a motion for summary judgment on Moore's counterclaim. *Id.* at 470. Moore's motion was granted in part and denied in part.[2] *Id.* Because the district court found that the critical facts of the lawsuit were in dispute, it concluded that summary judgment on Moore's counterclaim would be inappropriate. *Id.* at 477–78. It proceeded instead to treat Hudson's motion for summary judgment as a motion to dismiss, and dismissed Moore's counterclaim as wholly frivolous and brought for the improper purpose of intimidating Hudson. *Id.* at 480. On its own motion, the court then ordered Moore and Littler to show cause why Rule 11 sanctions should not be imposed. *Id.*

After the parties had filed memoranda and following oral argument, the court found that Moore's counterclaim "was brought without the support of any reasonable factual or legal basis and that the defendants' motive for bringing the counterclaim was to harass the plaintiff into dropping her suit and to deter others from bringing suit." *Id.* at 484. The court awarded sanctions of $14,692.50 under Fed. R.Civ.P. 11, jointly and severally against Littler and the three attorneys who signed the counterclaim. *Id.* at 484–85. Littler filed a timely appeal.

### ISSUES

1) Whether the defendants' counterclaim against Hudson for (a) breach of the covenant of good faith and fair dealing; (b) breach of the duty of loyalty; (c) violations of various California labor statutes; and (d) $200,000 in compensatory damages, $4 million in punitive damages, plus costs and attorney's fees, constituted a sanctionable violation of Fed.R.Civ.P. 11. 2) Whether the district court abused its discretion in imposing $14,692.50 in sanctions against Littler and the individual attorneys who signed the counterclaim.

### STANDARD OF REVIEW

■ The review of Rule 11[3] sanctions may require three separate inquiries. *Zal-*

---

1. Moore offered employees incentive-to-stay payments equal to 12 weeks' salary in order to encourage employees to remain on the job during the year and a half period before it closed the California department.

2. The underlying action between Hudson and Moore was settled.

3. Rule 11 provides in pertinent part:
 The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper;

*divar v. City of Los Angeles*, 780 F.2d 823, 828 (9th Cir.1986). First, whether specific conduct violated Rule 11 is a legal issue reviewable de novo. *Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir.1986). Second, any disputed factual determinations are reviewed under a clearly erroneous standard. *Id.* Third, the appropriateness of the sanction imposed is reviewed for abuse of discretion. *Id.*

■ In addition, in 1983, the amendments to Rule 11 rejected the requirement of establishing the subjective bad faith of a signing attorney prior to imposing sanctions. *Zuniga v. United Can Co.*, 812 F.2d 443, 452 (9th Cir.1987). The new standard for appraising the actions of a signing attorney is one of objective reasonableness under the circumstances. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir.1987); *Zaldivar*, 780 F.2d at 829.

### DISCUSSION

I. *General Principles for Reviewing Rule 11 Sanctions*

Pursuant to the 1983 amendments to Rule 11, an attorney who signs a "pleading, motion, or other paper," Fed.R.Civ.P. 11, in federal court warrants that it is "well-grounded in fact, that it is warranted by existing law or a good faith argument for an extension, modification or reversal of existing law, and that it is not filed for an improper purpose." *See Golden Eagle*, 801 F.2d at 1536. The two problems that Rule 11 addresses, therefore, are "frivolous filings" and the use of judicial procedures as a tool for "harassment." *Zaldivar*, 780 F.2d at 830. Sanctions are mandatory if the court concludes that Rule 11 has been violated. Fed.R.Civ.P. 11; *Huettig &*

*Schromm, Inc. v. Landscape Contractors Council*, 790 F.2d 1421, 1426 (9th Cir.1986).

■ An objective standard of reasonableness is applied to determinations of frivolousness as well as improper purpose. *Zaldivar*, 780 F.2d at 830–31. The key question in assessing frivolousness is whether a complaint states an arguable claim—not whether the pleader is correct in his perception of the law. *Id.* at 830, 832. Therefore, courts "do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion," because ultimate failure on the merits is irrelevant. *Id.* at 832. In addition, because of the objective standard applicable to Rule 11 analyses, a complaint that is found to be well-grounded in fact and law cannot be sanctioned as harassing, regardless of the attorney's subjective intent. *Id.; see also Golden Eagle*, 801 F.2d at 1538.

An award of Rule 11 sanctions raises two competing concerns: the desire to avoid abusive use of the judicial process and to avoid chilling zealous advocacy. *In re Yagman*, 796 F.2d 1165, 1182, *amended*, 803 F.2d 1085 (9th Cir.1986). This court has noted that sanctions should not be used " 'to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories.' " *Id.* (quoting Fed.R.Civ.P. 11 advisory committee's note, 1983 amendments, *reprinted in* 97 F.R.D. 198, 199 (1983)). Unfortunately, "[t]he line between these equally important concerns is necessarily vague," *id.*, particularly when deciding where to stake out the boundary between permissible and impermissible arguments for extensions of the law—one of the principal issues in the instant suit.

Finally, although this court reviews de novo whether particular conduct is sanctionable, it is necessarily handicapped in its

---

that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed

in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Fed.R.Civ.P. 11.

review because it is more distant from the parties and events than the district court. Specifically in this case, Judge Patel refers to previous sanctions against Littler and personal warnings to counsel Lederman that undoubtedly colored her appraisal of the propriety of Littler's conduct in this action. *Hudson*, 609 F.Supp. at 484–85 (also noting that Littler's reference to a case that supported a contrary argument to its claim was "perhaps the greatest degree of candor defendants have displayed in these proceedings;" also noting that "the court should not be forced to expend time and money on these lawyers' reckless adventures"). The district court's personal contact with the attorneys, therefore, may be one more element to factor into the review process.

## II. *The Counterclaim*

### A. *Implied Covenant of Good Faith and Fair Dealing*

█ The district court found that Moore's claim that it was entitled to tort damages because Hudson had breached the implied covenant of good faith and fair dealing between her and Moore not only was "without basis in law," but also was not a "plausible extension of existing law." *Id.* at 478, 482. Curiously, the district court expressly noted that in breach of implied covenant actions in California (the applicable state law in this diversity action), "[n]o bright line has yet emerged distinguishing when tort damages are proper; *the law is still evolving.*" *Id.* at 478 (emphasis added). Nevertheless, the court concluded that because previous cases allowed tort damages only against a party in a superior position (*e.g.,* insured against insurer), Moore's claim that it was entitled to tort damages against an employee was wholly without merit. *Id.* at 478–79.

Although the district court is correct in finding that the implied covenant case law in California to date focuses on protecting the weaker party in contracts " 'characterized by elements of public interest, adhesion, and fiduciary responsibility,' " *id.* at 478 (quoting *Seaman's Direct Buying Serv., Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 768–69 & n. 6, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984)), this circuit has explicitly cautioned courts against chilling an attorney's enthusiasm or creativity in pursuing new theories "in an area of the law which cannot be regarded as settled." *Zaldivar,* 780 F.2d at 834. There may be many valid public policy reasons for not recognizing breach of implied covenant tort actions by employers against employees (*e.g.,* chilling legitimate wrongful discharge claims), but such reasons are pertinent only to a decision whether to permit such a claim—not to whether a lawyer should be sanctioned for suggesting the claim. Prior to *Seaman's,* the seminal case in extending the concept of tort claims for bad faith breach of contract to commercial contracts, it appeared almost unthinkable to suggest that breach of implied covenant actions should be extended beyond the insurance context. The rapid and recent evolution of the law in this area highlights the precariousness of drawing a line between plausible and sanctionable arguments.

The district court acknowledged that California law implies in every contract, "including the employment contract," an implied covenant of good faith and fair dealing, and that the "law is still evolving." *Hudson,* 609 F.Supp. at 478. Moreover, courts have recognized that the implied promise requires reciprocal compliance from the parties, *Los Angeles Memorial Coliseum Comm'n v. National Football League,* 791 F.2d 1356, 1361 (9th Cir.1986), and that claims that an employer breached the promise "sound in both contract and tort," *Cancellier v. Federated Dep't Stores,* 672 F.2d 1312, 1318 (9th Cir.), *cert. denied,* 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982). Therefore, it is at least arguable that a claim for tort damages could be made against an employee who allegedly was scheming in bad faith to institute a fraudulent lawsuit against her employer during her last eighteen months of employment. Even Hudson concedes in her appellate brief that Littler's argument for reciprocal entitlement for tort damages has "superficial plausibility" and "appealing symmetry," but is "simply wrong." But an "argument need not be correct to

be considered made in good faith." *Yagman,* 796 F.2d at 1187.

The district court also criticized Littler for employing shifting and inconsistent theories in its counterclaim and at oral argument regarding which contract Hudson had breached—the employment relationship or the severance agreement. *Hudson,* 609 F.Supp. at 479, 483–84. The counterclaim is indeed murky in defining which contract is at issue. The court further noted that if the severance agreement had required Hudson to forego future claims against Moore, it would have violated public policy. *Id.* at 479–80. To the extent that Hudson could show that the severance agreement was a contract of adhesion, the agreement might well have violated public policy, rendering a claim of breach of such a contract frivolous. But if an agreement was reached as a settlement of potential claims, it may have been a valid contract. The record is unclear and disputed as to what agreement the parties actually reached. Based on the record before us, therefore, and the lack of clear, undisputed facts, it is difficult to base a sanction award on the district court's rationale that the severance agreement may have been contrary to public policy.

In sum, we conclude that Littler's attempt to seek tort damages under a *Seaman's*-type action is not frivolous, but rather an attempt to expand a developing area of the law.

## B. *Duty of Loyalty*

The district court also rejected as "absurd" Littler's argument that Hudson's instituting actions against Moore for wrongful discharge violated her duty of loyalty, as a corporate manager, to her employer. *Id.* at 479, 483. The court noted that the cases Littler offered on the fiduciary duties of employees were distinguishable, because they addressed high-ranking officers and directors engaged in misdeeds such as misappropriating trade secrets and skimming corporate profits. *Id.* at 481–82.

Hudson's suing Moore for allegedly improper motives is clearly distinguishable in fact and focus from other fiduciary relationship cases. However, if Moore's allegations are true—that Hudson began accumulating manufactured evidence to support a false claim of wrongful discharge during her last 18 months of employment—such behavior might arguably constitute a breach of loyalty. The district court, in fact, was obligated to assume the truth of Moore's allegations because it dismissed Moore's counterclaim under Rule 12(b)(6). *See David v. United States,* 820 F.2d 1038, 1039 (9th Cir.1987). Therefore, we conclude that the breach of duty of loyalty claim was not so devoid of any plausible foundation that it rose to the level of sanctionable frivolousness.

## C. *California Labor Statutes*

In the counterclaim, Littler cites five sections of the California Labor Code regarding employee duties and alleges that Hudson violated each of them. The district court reviewed each claim and repeatedly noted that "[d]efendant nowhere alleges that plaintiff" violated the code requirements. *Hudson,* 609 F.Supp. at 480. The district court's analysis is puzzling because Littler (on behalf of Moore) in fact makes the allegations the court found it omitted. For example, regarding Cal. Labor Code § 2854 (West 1971), which requires an employee to "use ordinary care and diligence," the court found that "[d]efendant nowhere alleges that plaintiff was anything but a useful and diligent employee." *Hudson,* 609 F.Supp. at 480. But the relevant section of the counterclaim alleges that "[p]laintiff did not use ordinary care and diligence in her employment." Had there been a trial, Littler may have been unable to support these allegations. But on the face of the pleading, it at least alleged that Hudson violated the Labor Code. We cannot conclude that no set of facts could be presented to support these claims.

The district court observed that Moore conceded at oral argument that Hudson was a competent credit manager. *Id.* at 480. But this concession is not necessarily inconsistent with its allegation that Hudson's preparation of false claims against Moore in her last year and a half of em-

ployment constituted bad faith conduct that arguably violated certain common law and statutory obligations. The labor statute claims, therefore, do not rise to the level of sanctionable pleading.

## D. *The Damage Claim*

 The district court found that the $4.2 million damage claim was "wholly unsubstantiated" and "unconscionable" against "an unemployed woman over 50 years of age whose husband is living on retirement." *Hudson,* 609 F.Supp. at 480. The court further noted that "[t]he nature and lack of justification for defendants' unconscionable damage claim raises a strong inference that the defendants' motive in bringing the counterclaim was to harass the plaintiff and to deter similar actions from being brought." *Id.* at 484. The court thus satisfied the requirement of finding the damage claim frivolous before appraising the impropriety of counsel's motives. *See Zaldivar,* 780 F.2d at 832. We agree with the district court that the absence of any reasonable support for the damage claim and the nature of the justification offered warrant a conclusion that Littler filed the counterclaim to harass Hudson.[4]

Littler insists that if we find that its other claims had a reasonable foundation, we cannot award Rule 11 sanctions solely on the basis of the damage claim. Littler offers three arguments to support this contention.

First, Littler argues that the district court's view of *all* claims as frivolous prejudiced its appraisal of the damage claim. That is undoubtedly true. But because we review de novo whether the claims in the pleadings constituted sanctionable behavior, our assessment is independent of the district court's. Littler's concern with the prejudicial perspective of the district court is therefore irrelevant to our review.

Second, Littler argues that because the prayer for relief is not an essential part of the complaint in California, we cannot base sanctions on such "surplusage." We reject the notion that an attorney who includes an unsupportable prayer for damages in his signed pleadings can escape appropriate sanctions because he could have omitted the prayer, had he chosen to do so. Since Littler chose to include that prayer, it must meet the Rule 11 standard of reasonableness. It is just such frivolous surplusage that Rule 11 is designed to deter.

Third, Littler contends that *Golden Eagle* instructs the courts not to sanction attorneys if "one argument or subargument in support of an otherwise valid . . . pleading . . . is unmeritorious." 801 F.2d at 1541. But Littler misapplies that statement to the facts of this case. The *Golden Eagle* court was reviewing a Rule 11 sanction in the context of a district court's holding that "the positions taken by the appellant in its motions papers were supportable, both legally and factually." *Id.* at 1534. The district court objected, not to the motion itself, but to the manner in which counsel had framed his supporting arguments. *Id.* at 1540–41. As we explain below, we do not find that the damage claim, but for one supporting argument, is "otherwise valid." Neither can the damage claim be construed as a "sub-argument" for the other substantive claims in Moore's counterclaim. Moreover, we do not believe that any number of sound substantive theories explored in the pleadings excuses attorneys from providing reasonable legal and factual support for a damage claim. We therefore conclude that nothing in Rule 11 precludes us from making an independent analysis of the prayer for relief to determine whether it is frivolous and brought for an improper purpose.

This circuit has held that prior to filing a civil action, an attorney has a duty to make

---

4. In affirming the district court's conclusion that a complaint was not frivolous, the court in *Greenberg* noted that "[w]here a *complaint* is in question, the 'improper purpose' analysis is not necessary because a nonfrivolous complaint cannot be said to be filed for an improper purpose." *Greenberg,* at 885. When a complaint is frivolous, however, we are not precluded from also reaching the question whether the purpose underlying the complaint is improper. The district court, therefore, did not err in considering both the frivolousness and improper purpose of the damage claim.

an investigation "to ascertain that the damages sought appear to bear a reasonable relation to injuries actually sustained." *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir.1979) (per curiam) (discussing the purposes of Rule 11). In addition, the concept of proportionality requires punitive damages to be reasonably related to actual damages. *Liodas v. Sahadi*, 19 Cal.3d 278, 284, 137 Cal.Rptr. 635, 562 P.2d 316 (1977).

The counterclaim sheds no light on the basis for computing the damage request. It merely states that "[d]efendant has been damaged by Plaintiff's aforesaid conduct." Nor do Littler's points and authorities submitted in response to the district court's order to show cause shed any new light on the basis for the damage request other than to observe that "the amount [of punitive damages] should be substantial because plaintiff's conduct was viewed as extremely serious and deliberately injurious to the Company."

In its appellate brief, however, and again at oral argument, Littler attempted to explain the $4 million punitive damage figure by indicating that it was intended to offset Hudson's claim for $4 million in damages against Moore and various individual employees. But the punitive damages in the counterclaim should be based on Moore's actual damages from Hudson's conduct during her alleged breach of duty under the employment relationship. The damage award Littler feared it might have to pay if Hudson prevailed is an illogical and improper basis for computing punitive damages against Hudson in a counterclaim. Moreover, Littler's admission that its $4 million punitive damage claim was made in response to Hudson's $4 million claim strongly suggests a retaliatory motive.

In addition, at oral argument on the district court's Rule 11 motion, and in its supporting papers, Littler claimed the $200,000 compensatory damage award was legitimately based on attorneys' fees and costs of litigation generated by defending against Hudson's allegedly spurious suit. But the counterclaim clearly made a separate request for "costs of suit, attorneys' fees, and interest." It therefore remains unclear from the face of the counterclaim what the compensatory damage calculation was intended to include.

As the district court noted at oral argument, if the cost of litigation was the only basis for compensatory damages, the proper cause of action would be one for malicious prosecution if Moore prevailed in the lawsuit. *See Babb v. Superior Court*, 3 Cal.3d 841, 846, 92 Cal.Rptr. 179, 479 P.2d 379 (1971) (en banc) ("[T]here is a certain metaphysical difficulty in permitting a counterclaim for malicious prosecution since theoretically that cause of action does not yet exist.... [A] cause of action for malicious prosecution first accrues at the conclusion of the litigation in favor of the party allegedly prosecuted maliciously."). The district court, therefore, accurately observed at oral argument that Littler was "jumping the gun" by attacking Hudson's suit in the counterclaim.

In counsel Lederman's declaration and again on appeal, it was argued that Hudson's salary and severance payments during the period of her alleged disloyalty might be a possible element of compensatory damages. Hudson was earning $2,725 per month at the time of her termination. She received $10,932 in incentive-to-stay and severance payments. Her total earnings during the eighteen-month winding-down period, therefore, equaled approximately $60,000. Even if Hudson had been violating various statutory and common law duties during the entire eighteen-month period (there were no allegations of unsatisfactory performance prior to that period), the $200,000 compensatory damage request is over three times greater than Hudson's total earnings during the period at issue. In addition, the punitive damage request is twenty-one times the amount of the compensatory damages. The $4.2 million total damage request is seventy times greater than Hudson's total earnings. Littler's failure to justify the basis for the compensatory damage calculation, and its inability to defend the lack of proportionality between the compensatory and punitive damages, only serve to support the district court's conclusion that the damage claims were frivolous and brought to harass Hud-

son. *See Bright v. Bechtel Petroleum, Inc.*, 780 F.2d 766, 772 n. 8 (9th Cir.1986) (noting that seeking $100 million in compensatory damages for withholding $3,222 in taxes was an indication of the "frivolous and bad faith nature" of the action).

We are unpersuaded by Littler's persistent attempts to justify the prayer by pointing to other cases in which large damage awards have been sought. Littler argues that because such requests are "commonplace," we should accept its prayer as just another large damage claim. First, each prayer for damages must be analyzed on a case-by-case basis. Prayers that are well-grounded in fact and law would not offend the concerns underlying Rule 11. But the assertion of offhanded, casual, or retaliatory damage prayers is one of the abuses that Rule 11 is particularly designed to discourage. The fact that others may have engaged in abusive pleading practices is not a convincing reason to immunize Littler from sanctions.

### III. *Sanction Award*

■ The district court has wide discretion in determining the appropriate sanction for a Rule 11 violation. *Golden Eagle*, 801 F.2d at 1538. After examining Hudson's declaration of fees incurred in responding to the counterclaim and motion for sanctions, the court awarded $14,692.50 in sanctions against Littler and the three attorneys who signed the pleadings. In light of the district court's conclusion that the counterclaim was wholly frivolous and harassing, the court did not abuse its discretion in ordering Littler to reimburse Hudson for the costs of litigating the counterclaim and subsequent sanction proceedings. However, because we find that the claims in the counterclaim, other than the damage claim, provided a colorable basis for relief, we remand to the district court to afford it the latitude of reviewing the sanction award in light of our holding.

### CONCLUSION

We affirm the district court's finding that Littler violated Rule 11. Our affirmance is based solely on the frivolousness and improper purpose underlying the damage claim. Although the other claims ultimately may not be winning arguments, they are not frivolous.

Because we do not adopt all of the conclusions of the district court, we vacate the sanction award and remand to give the district court an opportunity to reconsider its calculation of the award.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.