771 P.2d 469

Joseph SALLOMI and Angela Sallomi, husband and wife, Plaintiffs/Appellants/Cross–Appellees,

and

Frederick C. Creasy, Jr., Cross–Appellee,

v.

PHOENIX NEWSPAPERS, INC., dba The Arizona Republic, an Arizona corporation, Defendants/Appellees/Cross–Appellants.

No. 2 CA–CV 88–0350.

Court of Appeals of Arizona, Division 2, Department A.

March 28, 1989.

Frederick C. Creasy, Jr., Scottsdale, for plaintiffs/appellants/cross-appellees.

Jones, Skelton & Hochuli by Edward G. Hochuli and J. Rollie Wightman, Phoenix, for cross-appellee.

Gust, Rosenfeld, Divelbess & Henderson by Terrance C. Mead and Richard A. Segal, Phoenix, for defendants/appellees/cross-appellants.

## OPINION

HATHAWAY, Judge.

This is an appeal from a summary judgment in favor of Phoenix Newspapers, Inc., dba The Arizona Republic (the Republic) granted after Joseph and Angela Sallomi's (Sallomis) suit for damages resulting from publication of three allegedly libelous articles. Sallomis present the following issues on appeal: (1) summary judgment is not favored in defamation actions involving a private figure or person where the matter is not of public concern; (2) the trial court erred in applying the public records privilege; (3) the trial court erred in granting summary judgment where every element of defamation was established and a claim for false light invasion of privacy was stated.

The Republic cross-appeals the denial of its motion for attorney's fees, raising the following issues: (1) the court erred in finding that the Republic failed to establish a prima facie case for a statutory award of attorney's fees; (2) the court erred in finding that attorney's fees could not be awarded for violation of Ariz.R.Civ.P. 11, 16 A.R.S.; (3) an award of attorney's fees was justifiable under the court's inherent authority, and (4) the trial court erred by treating Sallomis' several motions in response to the motion for attorney's fees as a motion to dismiss. We affirm.

## FACTS

On April 25, 1984, the Arizona Republic published an article headlined "Hired Gun Talks, Triggers Probes Into Dark World." It reported an incident at El Oeste Lodge in which a "hitman" was apprehended. El Oeste was described as a "hangout for narcotics dealers and users." It further stated that the Sallomis' son, Dennis, was subsequently investigated and indicted with others on 56 counts of racketeering and narcotics crimes. The article also included a paragraph stating: "Although Sallomi has claimed to own El Oeste, its title is in the names of his parents, Joseph and Angela Sallomi of 2002 E. Solano." On May 26 and 27, 1984, the Republic published articles headlined respectively, "Businessman Jailed in Fraud Case" and "Phoenix Businessman Jailed in Attempted–Extortion Case." Each article was essentially the same story, which stated that El Oeste was owned and operated by Dennis Sallomi, the subject of the fraud and attempted extortion cases. Appellants Sallomi were not mentioned in these articles.

Demand letters were sent to the Republic requesting a full retraction of each article. On June 29, 1984, a correction was published acknowledging that Dennis Sallomi was not the owner of El Oeste.

The April 25th article was investigated and written by the Republic's reporter, Albert Sitter. It was based upon an interview with investigating police officers, police affidavits submitted to support searches of Dennis Sallomi's residence at El Oeste Lodge and another of Dennis Sallomi's business locations, and the grand jury indictment of March 20, 1984. The May 1984 articles indicating that Dennis Sallomi was the owner and operator of El

Oeste were based on information taken from a booking slip on file at the Phoenix Police Department.

Sallomis claim the published articles caused them to lose both prospective sales of El Oeste and their liability insurance coverage on El Oeste, impaired their ability to obtain credit, and subjected them to ridicule and contempt from their friends and business associates. Evidence which was part of the record on the motion for summary judgment indicated that Sallomis had unsuccessfully attempted to sell El Oeste for several years before the articles were published. They obtained a $250,000 loan on El Oeste within two months after publication of the articles and were able to insure the premises through another carrier.

## SUMMARY JUDGMENT

Sallomis first argue that summary judgment is the exception in a defamation action involving a private person because a negligence standard is applicable. They cite as authority for this proposition *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 105 S.Ct. 2939, 86 L.Ed.2d 593 (1985). The discussion in Justice White's concurring opinion is not directed to summary judgment in a defamation action, but to the difficulty of satisfying the actual malice burden of proof. Sallomis' argument is without merit.

## PUBLIC RECORDS PRIVILEGE

Sallomis contend that the Republic abused the public records privilege and therefore it does not apply. Thus, they argue, the court erred when it found the Republic insulated from any liability for the allegedly libelous statements. Sallomis recognize the privilege for fair and accurate reports of public documents. However, they assert that the Republic's statement of facts in its motion for summary judgment indicates that the April 25, 1984, article was prepared on the basis of interviews with police officers in addition to public records. They contend such interviews are not public records and should therefore have precluded application of the privilege. Further, Sallomis argue, the Republic unfairly and inaccurately reported the contents of the police affidavits.

■■■ Upon review of the April 25, 1984, article, the search warrant affidavits and the grand jury indictment, it is clear that the information contained in the article was available in those public records. While the Republic's reporter may have spoken with police officers, any information beyond that already available in those documents was not included in the article. Sallomis' primary argument that the report was neither a fair nor accurate representation of the information contained in the public records is focused on alleged conclusions drawn by the reporter and included in the article. They assert that the article's description of El Oeste as a "hangout for narcotics dealers and users" was not a conclusion or characterization warranted by any facts contained in the affidavits. They support their contention with a journalism professor's expert witness affidavit. That affidavit reads in pertinent part:

4. I can find no reference in said Affidavit for Search Warrant to the Sallomi resort being a "hang out for narcotics dealers and users";

5. The reference and description of the resort owned by Joseph and Angela Sallomi in the subject newspaper article of April 25, 1984 as a "hang out for narcotics dealers and users" is careless, negligent and sloppy reporting. It is apparent to me that the reference to and description of the Sallomi's resort as a "hang out for narcotics dealers and users" is nothing short of an unwarranted conclusion by the reporter;

6. Although the Affidavit for Search Warrant does allege and allude to drug activity at the resort, in my opinion, the reporter went beyond the standard of careful and prudent reporting by referring to the resort as a "hang out for narcotics dealers and users"; ...

The Republic responds that the public records privilege relies on fidelity to a public record rather than to an independent truth. *Mathis v. Philadelphia Newspa-*

*pers, Inc.*, 455 F.Supp. 406, 417 (E.D.Pa. 1978) (affirming summary judgment for defendant newspaper where reporters had relied on an FBI report that incorrectly included the plaintiff's photograph). It argues this parallels the principles of substantial truth in application: "It is not necessary that [the article] be exact in every immaterial detail or that it conform to that precision demanded in technical or scientific reporting. It is enough that it conveys to the persons who read it a substantially correct account of the proceedings." Restatement (Second) of Torts § 611 comment f (1977).

In deposition testimony made part of the record on motion for summary judgment, Sallomis' expert controverts his affidavit opinion:

Q. By MR. HENDERSON: In fact, the entire affidavit, sir, as we go through, relates to cocaine use, cocaine presence and dealings in cocaine, buying and selling, taking place there at the lodge, does it not?

A. Yes.

Q. What is your definition of the word "hangout"?

A. Hangout?

Q. Yes, sir.

A. A hangout is a place where—in my mind, I think it is a negative word, which may or may not be true in everybody's mind.

\* \* \* \* \* \*

Q. Do you have any problem with the story other than the comment about the use of the word "hangout"?

A. No.

\* \* \* \* \* \*

... I think it would have been better—to tell you the truth, "a gathering place" probably would have been a better choice of words.

Q. And you would equate that as meaning something other than "hangout"?

A. To me, yes.

\* \* \* \* \* \*

A. I think "gathering place" would not have a negative connotation that the word "hangout" has, and I don't have a problem with "gathering place."

Q. So your problem is with the negative connotation with "hangout"?

A. I am afraid it is.

\* \* \* \* \* \*

Q. Part of the accuracy provision of the public records privilege is that everything be published or that it be a fair abridgment, correct?

A. Yes, a fair abridgment.

Q. Would you say that Mr. Sitter, in the article that is the subject of this lawsuit, has fairly abridged the affidavit to the search warrant that he refers to?

A. For the most part, I am afraid I think he did.

Q. Except as to the reference to "hangout"?

A. Yes.

Q. And except as to the reference to the lodge being owned by Dennis Sallomi?

A. Yes.

Q. And except as to the reference of Dennis Sallomi claiming that he owned it?

A. That's true.

Sallomis contend that the May 1984 articles did not accurately state the contents of the booking slip reportedly relied upon in identifying Dennis Sallomi as the owner and operator of El Oeste. The booking slip had spaces designated "employer" and "occupation." Into these spaces were written respectively "self" and "lodge manager." The court found that the articles stating that the son claimed to be an owner was a substantially correct reading of the public record, and we find no error.

We agree with the court below that the public records privilege applies and that all the articles were a fair and accurate abridgment of the public records used.

Sallomis further argue that they established every element of a claim for defamation and for a claim of false light invasion of privacy. Nevertheless, we believe the Republic's public records privilege precludes recovery. Accordingly, we affirm.

## CROSS–APPEAL ON
## ATTORNEY'S FEES

■ The Republic filed a motion against Sallomis and their attorney (cross-appellees) for attorney's fees and other expenses, including a punitive award under Ariz.R.Civ.P. 11(a), 16 A.R.S., or pursuant to either A.R.S. §§ 12–341.01(C) or 12–349, or under the court's inherent authority. On appeal, the Republic argues that the court erred in denying its motion on the basis that it had failed to establish a prima facie case for a statutory award of attorney's fees.

The court found that A.R.S. § 12–349 was not applicable because it was enacted after the commencement of this action. The Republic contends that as a procedural or remedial statute, it should be applied to all cases pending on its effective date, or at least to expenses incurred after its effective date. The Republic seeks to fit the present case into an exception to A.R.S. § 1–244, which provides: "No statute is retroactive unless expressly declared therein." As long as a statutory change is procedural and does not affect or impair substantive rights, it is applicable retroactively. *Bouldin v. Turek*, 125 Ariz. 77, 78, 607 P.2d 954, 955 (1979). The court in *Bouldin*, in discussing the retroactive effect of awarding attorney's fees under A.R.S. § 12–341.01, found statutes providing for attorney's fees similar in effect to those changing the measure of damages. Therefore, amendments to such provisions were found to be substantive, not procedural, and could not be given retroactive effect. See also *Abrams v. Horizon Corp.*, 137 Ariz. 73, 77, 669 P.2d 51, 55 (1983). Using the same analysis, we agree that A.R.S. § 12–349 may not be retroactively applied in this case.

■ The Republic argues that the evidence it presented meets the statutory standard for an award of attorney's fees under A.R.S. § 12–341.01(C), which provides in pertinent part:

Reasonable attorney's fees shall be awarded by the court in any contested action upon clear and convincing evidence that the claim or defense consti-

tutes harassment, is groundless and not made in good faith. In making such award, the court may consider such evidence as it deems appropriate....

The Republic's evidence consisted of a transcript of a police informant's taped conversations principally with Dennis Sallomi. They supported these transcripts with a deposition of the informant. Based upon the content of those conversations and the fact that Sallomis' attorney, had also previously represented Dennis Sallomi, the Republic asserts the Sallomis and their attorney filed the present action to "chill" the criminal investigation against Dennis. No controverting evidence was produced by Sallomis and the Republic argues that the court erred in considering argument by counsel during the hearing on the motion for attorney's fees, including unsworn explanations included in legal memoranda filed with the court.

An award of attorney's fees under A.R.S. § 12–341.01(C) requires clear and convincing evidence of harassment, groundlessness of the claim and bad faith. *Gilbert v. Board of Medical Examiners*, 155 Ariz. 169, 180, 745 P.2d 617, 628 (App.1987). In reviewing an attorney's conduct to determine whether a statutory violation has occurred, the court will apply an objective standard on the groundlessness element, inquiring whether no reasonable person would have brought the action. *Gilbert*, supra. The harassment and bad faith elements will be reviewed on a subjective basis. *Id.* The trial court determined that the evidence presented to justify an award under A.R.S. § 12.341.01(C) was insufficient. "The weight to be given evidence is peculiarly within the province of the trial court and it is the trial court and not this court which draws a distinction between evidence which is clear and convincing, and evidence which merely preponderates." 155 Ariz. at 181, 745 P.2d at 629.

The court's minute entry stated:
[T]he evidence suggested by Defendants to support the conclusion that Mr. and Mrs. Sallomi and Counsel have brought this action for harassment or in bad faith is too tenuous and remote.

* * *

It certainly can be argued that the remainder of the evidence from the wiretap demonstrates that Dennis Sallomi harbored the improper or illegal objectives. The court is of the opinion, however, that the evidence associated with Dennis Sallomi is insufficient to impose sanctions against Mr. and Mrs. Sallomi and Counsel.

Upon review of the record and the court's findings, we find no error.

The Republic also contends that Sallomis' claim was knowingly filed for an improper purpose—to "chill" the criminal investigation against Dennis. It asserts that the trial court erred in finding insufficient evidence to support the imposition of sanctions for a Rule 11 violation. The Republic argues that Sallomis had information before filing the lawsuit suggesting bad faith and a likelihood the suit would not be successful. Prevailing on its motion for summary judgment is offered as sufficient to show that the claim was insubstantial. That argument fails. "It is obvious from the text of the Rule [11] that the pleader need not be correct in his view of the law.... [T]he granting of a summary judgment against the pleader is not dispositive of the issue of sanctions." *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir.1986).

The standard of review on appeal for sanction determinations approved by Division One of this court in Gilbert v. Board of Medical Examiners, supra, is the three-tiered approach announced by the Ninth Circuit in *Zaldivar*, supra. The second tier analysis, applicable in this case states: "If the legal conclusions of the [trial court] that the facts constitute a violation of the rule is disputed, we review that legal conclusion *de novo*." *Gilbert*, 155 Ariz. at 184, 745 P.2d at 632, quoting *Zaldivar*, 780 F.2d at 828. The Ninth Circuit has tempered *Zaldivar's* de novo review, recognizing that

[a]lthough this Court reviews de novo whether particular conduct is sanctionable [under Rule 11], it is necessarily handicapped in its review because it is more distant from the parties and events than the district court.... The district court's personal contact with the attorneys, therefore, may be one more element to factor into the review process. *Hudson v. Moore Business Forms, Inc.*, 827 F.2d 450, 453–54 (9th Cir.1987). Therefore, the trial court's determination should be afforded deference under this standard of review.

Sallomis argue that under the above standard of review and the objective standard of reasonable inquiry applied in determining whether an attorney's conduct violates Rule 11, the trial court's finding should be upheld. In the present case, the trial court rendered detailed findings after oral argument on the motion for attorney's fees and review of the pleadings. Upon review of the record before us, we find no error and affirm.

The Republic asserts the trial court erred in failing to impose sanctions under its inherent authority. It relies on *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980) to support its position but fails to address appropriate standards of review on appeal for its claim. *Roadway Express*, was decided under 28 U.S.C. § 1927. The cases construing that statute allow broad discretion to the trial court in imposing sanctions and are reviewed under a "clearly erroneous" standard. E.G. *Kanarek v. Hatch*, 827 F.2d 1389, 1391 (9th Cir.1987). Reviewing the record and the court's findings, we find no error.

The Republic contends the trial court erred by treating Sallomis' response as a motion to dismiss. No authority is offered to support this proposition. Therefore, we decline to consider it further.

The parties shall bear their respective attorney's fees and costs on this appeal and cross-appeal.

LIVERMORE, P.J., and HOWARD, J., concur.