35 F.3d 571
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Nsaka KANINDA, Plaintiff,
and
Arthur S. Black, Esq., Real Party in Interest, Appellant,
v.
STATE FARM LIFE INSURANCE CO., Defendant-Appellee.
 No. 92-55938.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 3, 1994.
Decided Sept. 7, 1994.
 
 Before: D.W. NELSON, REINHARDT and BRUNETTI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Attorney Arthur S. Black appeals the district court's order imposing Rule 11 sanctions in the amount of $49,030.90, following the dismissal of the lawsuit of Black's client, Nsaka Kaninda, against State Farm. Black contends that the district court's finding that he failed adequately to investigate the factual basis of Kaninda's claim violates the "reasonable inquiry" test for determining when Rule 11 sanctions are appropriate. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990).
 
 
 3
 We agree, and reverse the district court's order imposing Rule 11 sanctions.
 
 I.
 
 4
 This case arises out of a State Farm life insurance policy taken out in August, 1990, in the name of Mambu Makanda, a Zaire national. Nsaka Kaninda, also a Zaire national, was listed as the beneficiary. On June 18, 1991, Kaninda came to the law offices of Arthur S. Black, who had represented him in several matters over the course of five years. Kaninda told Black that Makanda had been killed in a hit and run accident in Zaire and asked Black to represent him in his efforts to collect from State Farm. In his initial meeting with Black and in subsequent meetings, Kaninda related the following events:
 
 
 5
 In August, 1990, Kaninda was contacted by State Farm agent Andre McDonald. McDonald asked Kaninda whether he needed life insurance. Kaninda responded that his step-brother Makanda was looking for life insurance, and a meeting was arranged for Makanda to apply for the policy.
 
 
 6
 Kaninda and Makanda came to McDonald's office to complete the life insurance application. Kaninda was listed as the beneficiary because there was nobody else in the United States close to Makanda. A State Farm policy was issued to Makanda providing $100,000 in death benefits payable to Kaninda.
 
 
 7
 In February, 1991, Kaninda called McDonald and asked that Makanda's coverage be increased to $225,000, as Makanda was about to be married. Makanda sent a written request for the increase.
 
 
 8
 On March 13, 1991, Kaninda and Makanda returned to McDonald's office and completed an application to increase Makanda's coverage to $225,000. Kaninda was again listed as the beneficiary, but he told Black that there was an understanding that after Makanda married, his wife would become the beneficiary.
 
 
 9
 Responding to a Western Union telegram dated April 16, 1991, Makanda traveled to Zaire to comfort his sick mother. Kaninda told Black that while in Zaire, Makanda had been struck by a car and died.
 
 
 10
 On the basis of Kaninda's statements, Black agreed to represent Kaninda and to help him collect the insurance money from State Farm.
 
 
 11
 In June 1991, before Black presented State Farm with any formal claim, a State Farm agent, Ms. Gold, told Black that State Farm policy dictated that the company would automatically contest Kaninda's claim because the insured, Makanda, had died within two years of having taken out the policy.
 
 
 12
 Black then sent to State Farm several documents that he had earlier received from Kaninda: (1) A French-language Zaire death certificate for Mambu Makanda, (2) a French-language burial certificate showing Makanda's place of burial in Zaire, (3) a French-language Zaire Police Requisition form ordering a medical examiner to examine Makanda's body, (4) proof of payment of all State Farm premiums, (5) a copy of the English-language telegram urging Makanda to travel to Zaire, and (6) a Los Angeles police report which stated that Makanda reported losing his passport, credit cards, travelers checks, Los Angeles Trade Tech student identification card, and RTD bus pass.
 
 
 13
 State Farm responded by letter, again referred to the policy of automatically contesting claims made within a two-year period after life policies are purchased, and requested that Kaninda complete certain claim forms. Black returned Kaninda's completed claim forms and informed State Farm of his belief that the company's policy of automatically contesting death claims made within two years after purchase of life insurance policies constituted bad faith. Black also enclosed (1) a copy of a French-language letter from Tshimbalanga Kasongo, a man Kaninda identified as his uncle, which had accompanied and which referred to the death-confirming documents Black had previously sent to State Farm; and (2) French-language statements from Mafuta Mbola and Bopeya Lengo, individuals identified by Kaninda as witnesses to the accident that killed Makanda.
 
 
 14
 In August 1991, Black filed a lawsuit in California Superior Court for the County of Los Angeles. The action sought recovery of the life insurance proceeds and damages for State Farm's alleged bad faith conduct. State Farm removed the action to the United States District Court for the Central District of California on September 20, 1991.
 
 
 15
 In October 1991, Black sent State Farm's counsel photocopies of a Social Security card and passport bearing Makanda's name. Two days later, Black sent a letter to State Farm's counsel affirming that Kaninda was a long-time client, and that he had regular contact with him. Black then sent another letter to State Farm's counsel indicating that he had affirmed that Makanda had Visa and Mastercard accounts with Wells Fargo Bank, numbers 4726-4048-82199 and 5415-4042-92410, respectively.
 
 
 16
 On December 26, 1991, Black filed an opposition to State Farm's motion to compel the production of documents.[1]
 
 
 17
 In January 1992, Black received a letter from the Zaire Embassy in Washington, D.C. The letter stated that the death certificate, burial certificate, and police requisition for medical examination that Black had received previously from Kaninda were "true, authentic and genuine original documents and business records kept and maintained in the ordinary course of the business of the government of the Republic of Zaire with entries thereon at or about the happenings of events therein."
 
 
 18
 On February 28, 1992, State Farm sent Black a letter which asserted that it was "almost certain" that Kaninda had filled out Makanda's Mastercard and Visa applications, 2) that there were record that "indicate" that deposits and withdrawals were made on Makanda's Mastercard and Visa accounts after Makanda's death, 3) that State Farm's "investigations in Zaire reveal" that Makanda did not die there, and 4) that State Farm had "explored" the other evidence of Makanda's existence (his passport, his attendance at L.A. Trade Tech, his credit card records, his social security number, his RTD pass) and had concluded that they "suggest" that "Mr. Makanda may not have existed at all." State Farm included no evidence to support these assertions, and it expressly advised Black that it was not making any allegations that Kaninda had committed fraud. State Farm said it wished to investigate the matter further and that it would discuss its position with Black at a meeting scheduled several days later. The record does not reveal whether or not such a meeting occurred. In any event, when Black informed Kaninda about the contents of State Farm's letter, Kaninda insisted that his claim was genuine, and subsequently provided Black with additional English-language affidavits from individuals he identified as (1) Makumbu Mey (Makanda's mother) and (2) Mawela Jose, a French national who witnessed the accident.
 
 
 19
 On March 20, 1992, Black filed a motion for a protective order and sanctions, which was later withdrawn. The motion sought to quash State Farm's attempt to subpoena Kaninda's bank records.
 
 
 20
 On April 13, 1992, State Farm moved for summary judgment and Rule 11 sanctions.[2]
 
 
 21
 At the hearing on State Farm's motion, the district judge held that the lawsuit was a fraud perpetrated by Kaninda. He denied Black's motion to be relieved as Kaninda's counsel, dismissed the case with prejudice and awarded $49,030.90 in Rule 11 sanctions against Black.
 
 II.
 
 22
 Rule 11 requires that attorneys make "reasonable inquiry" into the factual basis of every "pleading, motion and other paper" filed with a federal court. Rule 11, Fed.R.Civ.P. To determine whether the inquiry actually conducted by an attorney was adequate, the district court applies a standard of "objective reasonableness under the circumstances." Hudson v. Moore Business Forms, Inc., 836 F.2d 1156, 1159 (9th Cir.1987).
 
 
 23
 The district court's order imposing Rule 11 sanctions is reviewed for abuse of discretion. Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990). The district court would necessarily have abused its discretion if it based its ruling on a "clearly erroneous assessment of the evidence." Id. at 402.
 
 
 24
 Finally, sanctions cannot be imposed on Black for papers that he filed in the California Superior Court before State Farm removed the action to the district court. Hurd v. Ralph's Grocery Co., 824 F.2d 806 (9th Cir.1987). The reasonableness of Black's efforts to verify Kaninda's claim must be assessed beginning on the date State Farm removed the case to the district court, September 20, 1991.
 
 III.
 
 25
 The only issue here is whether Black's inquiry into the factual basis of Kaninda's claim was objectively reasonable given the circumstances surrounding the claim and the resources available to Black to conduct his investigation. A short rehearsal of the facts leaves little doubt that Black satisfied this test. Realistically, Black had a limited opportunity to evaluate the credibility of the evidence offered by his client, Kaninda, in support of his claim. Makanda's death allegedly had taken place in Zaire. The death-confirming documents originated in Zaire. The witnesses were in Zaire. To make matters worse, a civil war was then raging in that country, making travel there unreasonably dangerous and expensive for a sole practitioner such as Black. (That the insurance company caused its employees to travel to Zaire during the period involved does not affect our analysis.)
 
 
 26
 In his initial interview, Kaninda presented Black with a set of facts about his claim against State Farm that was detailed, consistent, and seemingly credible. It is uncontroverted that Kaninda was Black's long-time client--Black had represented Kaninda before and had no reason to doubt his word.
 
 
 27
 Black also had no reason to doubt the authenticity of the documents Kaninda gave him in support of his claim. Contrary to State Farm's assertions, there is nothing inherently suspicious about Makanda listing his step-brother, Kaninda, as the beneficiary on his life insurance policy. Step-brothers may be as close as brothers.
 
 
 28
 Nor were Kaninda's witness statements inherently suspect, as State Farm suggests. Although some were in French and others in English, this proves nothing--French is Zaire's official language and English is commonly used in Zaire as in many countries around the world. And although subsequent analysis by State Farm's handwriting experts suggested that Kaninda had forged the signature that he identified as Makanda's on many of the documents, no evidence to that effect was furnished to Black.
 
 
 29
 In an ordinary case, Black could have verified several important aspects of Kaninda's story. Had Makanda been killed in the United States, Black readily could have obtained positive confirmation of his identity and cause of death. Because Makanda was killed in Zaire, however, verifiable information was much more difficult for Black to obtain.
 
 
 30
 Instead, Black was obliged to rely on his client's word to a far greater degree than in an ordinary case. In signing the complaint, Kaninda had sworn under penalty of perjury that Makanda had taken out the State Farm life insurance policy, and that he was now dead. Kaninda also supplied Black with apparently genuine Zaire government documents and witness testimony in support of his claim--documents which were later authenticated by the Zaire embassy in Washington, D.C.
 
 
 31
 But Black did not rely solely on his client's sworn statement and the material his client provided him. From September 20, 1991, the date that State Farm removed the action to the district court, Black also made affirmative inquiries in an effort to confirm important elements of Kaninda's claim. Within two weeks after State Farm removed the action, Black confirmed that Makanda had credit card accounts with Wells Fargo Bank, which provided substantial evidence confirming Makanda's (former) existence. Soon thereafter, Black contacted the Zaire embassy in Washington, and by late January--two and one-half months prior to State Farm's Rule 11 motion--the embassy confirmed the authenticity of the foreign documents relating to Mambu Makanda's death.
 
 
 32
 At this point, Black had fulfilled his obligation to conduct a reasonable inquiry into the factual basis of Kaninda's claim. Under Hudson, the reasonableness of Black's inquiry into the factual basis of Kaninda's claim must be assessed in light of the circumstances surrounding the claim and the resources available to Black to conduct his investigation. See Hudson, 836 F.2d at 1159. Given the difficulties he faced in this case, Black clearly met that standard. If Kaninda was indeed determined to deceive his lawyer and defraud State Farm, Black cannot be held responsible for failing to uncover the scam so long as he made reasonable inquiries. Indeed, it took State Farm, with its handwriting experts and professional investigators, months of effort both in the U.S. and Zaire to uncover inconsistencies on Kaninda's story. Black's duty under Rule 11 was to make a reasonable inquiry into the claim's overall factual basis. He fully discharged that obligation.
 
 IV.
 
 33
 State Farm maintains that even if Black had discharged his initial obligation to conduct a reasonable investigation, the sanctions imposed by the district court were nevertheless proper because State Farm "put Black on notice" that Kaninda's claim was fraudulent in a letter dated February 28, 1992. This contention is incorrect and misleading. State Farm's February 28 letter did not provide Black with any evidence that Kaninda's claim was fraudulent. In fact, despite making a number of speculative and conclusory assertions about Makanda, State Farm's letter expressly disclaimed any intent to allege that he may not have existed, may not have died in Zaire, or that the name may possibly have simply been one used by Kaninda. In other words, State Farm expressly advised Black that it was not making any allegations that Kaninda had committed fraud. Instead, the letter expressly stated that State Farm intended to investigate the question further.[3]
 
 
 34
 In sum, State Farm's February 28 letter did not require Black to do more that he did in response. The letter contains suppositions without supporting evidence, and nothing more. Faced with this deliberately ambiguous, cautious and uninformative letter, Black chose to check further with his client and to rely on Kaninda's assurances--assurances that were backed up by documentary evidence furnished to Black by Kaninda after Black confronted him with State Farm's letter--and on the independent confirmation Black had previously made of 1) the Mastercard and Visa accounts and 2) the death-confirming documents. Under the circumstances, Black's actions were clearly reasonable. The district court abused its discretion in imposing the sanctions.
 
 
 35
 We reverse the district court's judgment, and vacate its award of sanctions.
 
 
 36
 REVERSED.
 
 BRUNETTI, Circuit Judge, dissenting:
 
 37
 I dissent. Although I agree that attorney Black was not required to verify every fact and every document involved in Kaninda's claim, I disagree with the majority's conclusion that Black's duty under Rule 11 was merely "to make a reasonable inquiry into the claim's overall factual basis."
 
 
 38
 Federal Rule of Civil Procedure 11 requires that attorneys make a reasonable inquiry into the factual basis of every paper filed in the district court. Rule 11 applies only to the attorney's conduct at the time a paper is signed. Cunningham v. County of Los Angeles, 879 F.2d 481, 490 (9th Cir.1988), cert. denied, 493 U.S. 1035. Therefore, a district court should decide whether to impose sanctions under Rule 11 only after a careful examination of each paper filed, and an assessment of the inquiry the attorney made before filing that paper.
 
 
 39
 The majority correctly notes that investigating the factual basis for this case involved unusual difficulties. Nevertheless, Black received information during the course of the litigation that should have made him aware that Kaninda's claim was groundless. When State Farm responded to interrogatories on January 23, 1992, it pointed out several serious inconsistencies in the evidence on which Black relied. Moreover, during his March 24, 1992 deposition, Kaninda had extreme difficulty recalling many basic details regarding Makanda.
 
 
 40
 The district court in this case took the approach of imposing Rule 11 sanctions on attorney Black without making specific findings regarding the inquiry Black conducted before filing each pleading in the litigation. The majority takes a similar approach of holding that Rule 11 sanctions were not warranted for any of the litigation because Black's factual inquiry was reasonable as a general matter. I think both approaches are improper. Black's obligations under Rule 11 arose each time he filed a pleading. Rather than make a blanket statement about the claim's overall factual basis, the court should review each pleading individually in light of the information available to Black at the time of filing. The district court is in a better position than this court to conduct such a review.
 
 
 41
 Accordingly, I would vacate the award of sanctions and remand this case to the district court so that it can engage in the proper inquiry.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At the time this opposition was filed, State Farm had not raised any questions about the validity of Kaninda's claim
 
 
 [2]
 Prior to State Farm's motion for summary judgment and Rule 11 sanctions, Black had filed the following papers in the district court upon which State Farm argues Rule 11 sanctions were properly imposed: (1) a jury trial demand; (2) a joint status report regarding the mandatory status conference; (3) a factual analysis of the case; (4) a memorandum regarding the status conference hearing; (5) an opposition to defendant's motion to compel the production of documents; (6) a motion for protective order and sanctions (later withdrawn); (7) a witness list; and (8) a memorandum of contentions of fact and law
 
 
 [3]
 State Farm notes at the end of its letter that it would be prepared to discuss that matter further at a meeting scheduled for March 3, 1992. However, for reasons that are not included in the record, that meeting never took place. As a result, Black had no basis for assessing the credibility of State Farm's intimations